C. W. LACY v. STATE OF NORTH CAROLINA.

(Filed 7 March, 1928.)

1. **Courts—Supreme Court—Jurisdiction in General.**

    The general jurisdiction given to the Supreme Court under the provisions of our Constitution, Art. IV, sec. 8, is a reviewal of the lower courts on matters of law and legal inference, with the power to review questions of fact in certain instances in matters of purely equitable nature, and to prescribe the rules of practice and procedure in the lower courts when not in conflict with rules prescribed by the General Assembly, Art. IV, sec. 12. C. S., 1421.

2. **Constitutional Law—Distribution of Governmental Powers and Functions—Legislative Powers.**

    The General Assembly is without power to prescribe rules of practice or procedure for the Supreme Court.

3. **Courts—Supreme Court—Jurisdiction of Claims Against the State.**

    The Supreme Court in the exercise of its recommendatory original jurisdiction to hear claims against the State, Art. IV, sec. 9, will dismiss any action brought against the State where the sole issue is one of fact.

4. **Highways—State Highway Commission—Actions Against for Breach of Contract.**

    A claim against the State Highway Commission for damages arising from an alleged breach of contract in the building of a State highway is a claim against the State, but when the only issues presented therein are ones of fact, the Supreme Court will not exercise its recommendatory original jurisdiction, and the action will be dismissed.

**5. Same.**

A provision in the contract made by the State Highway Commission for the construction of a State highway that all disputes and misunderstandings between the parties in relation to its performance be referred to the engineer in charge of the work is valid and binding.

THIS is a proceeding to enforce a claim against the State, for the sum of $150,133.54.

Claimant alleges that this sum is due for work done by him in the performance of a contract with the State Highway Commission, an agency of the State.

Complaint was filed in the office of the Clerk of this Court, setting forth the nature and ground of the claim. After answer was filed to this complaint by the Attorney-General for the State, claimant, by leave of Court, filed his reply. By this proceeding, instituted pursuant to the provisions of C. S., 1410, claimant invokes the jurisdiction of the Supreme Court, conferred by section 9, Article IV of the Constitution of North Carolina, with respect to his claim.

The proceeding has been heard and considered upon the pleadings. It appearing to the Court therefrom, after argument by counsel, that claimant is not entitled to a decision of this Court, recommending that the General Assembly provide for the payment of the claim, by appropriation or otherwise, for the reasons set out in the opinion below, the proceeding is dismissed.

*Ruark & Fletcher for claimant.*

*Attorney-General Brummitt and Assistant Attorney-General Ross for the State.*

CONNOR, J. This Court, under the name of "The Supreme Court of North Carolina," consisting of a Chief Justice and four Associate Justices, is established and provided for by the Constitution of the State; it owes its existence to the Constitution alone, and is in nowise dependent upon statute, for either its existence or its jurisdiction. Const. of N. C., Art. IV. In *S. v. Smith,* 65 N. C., 369, *Pearson, C. J.,* speaking of this Court, as well as of the Court for the Trial of Impeachments, the Superior Courts, and the courts of the justices of the peace, says:

"These judicial tribunals are established by the Constitution; owe their existence to that instrument alone, and are in nowise dependent upon an act of the General Assembly."

This was not true of the Supreme Court of North Carolina prior to 1868; provision was made, for the first time in the history of the State, in the Constitution adopted in 1868, for the establishment of the Supreme Court. Prior to that date this Court was a mere statutory

Court, dependent both for its existence and its jurisdiction upon an act of the General Assembly. The General Assembly had the power to prescribe not only its jurisdiction, but also the rules of practice and procedure, in accordance with which its statutory jurisdiction should be exercised. See chapter 33, Revised Code of 1854.

Our jurisdiction, now conferred by the Constitution of the State, is both appellate and original. By section 8 of Article IV, the Court has jurisdiction "to review, upon appeal, any decision of the courts below, upon any matter of law or legal inference." By section 9 it has original jurisdiction "to hear claims against the State, but its decisions shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the General Assembly for its action." In addition to this appellate and original jurisdiction, the Court also has, by virtue of the amendment to the Constitution of 1868, adopted in 1875, the same jurisdiction over "issues of fact" and "questions of fact," as that exercised by it prior to the adoption of the Constitution of 1868. This jurisdiction with respect to "issues" or "questions of fact" is exercised only in actions which are equitable in their nature, and in which relief is sought upon equitable principles. The Court also has the power, by virtue of the Constitution, to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts. The jurisdiction of the Supreme Court is limited as well as conferred by the Constitution of the State. The Court exercises its jurisdiction by virtue of constitutional and not statutory provisions.

*In re Applicants for License,* 143 N. C., 1, *Hoke, J.,* says: "In performing the duty of examining applicants (for license as attorneys and counsellors at law) and issuing license, we are not acting as a Supreme Court; certainly not in the exercise of our constitutional powers. We are simply discharging a duty imposed upon us by the Legislature, which we would, no doubt, have the right to decline. We have heretofore done this work in obedience to this reasonable requirement on the part of the Legislature; partly following a custom which has been sanctioned by time and approved by trial; partly from our desire at all times to do what we can to uphold the traditions and promote the interests of the profession to which we belong."

It has been held by this Court that the General Assembly may, by statute, impose duties upon the Chief Justice and the Associate Justices of the Supreme Court, and upon the judges of the Superior Court, with respect to the supervision of elections; it was said that the effect of the statute was to make each Judge a Special Court, under section 2 of Article IV, with jurisdiction conferred by virtue of section 12 of said article. *McDonald v. Morrow,* 119 N. C., 666, *Harkins v. Cathey,* 119

N. C., 650. In each of these cases *Avery, J.,* dissented, filing an opinion stating the grounds of his dissent.

With respect to the power of the General Assembly to deprive the judicial department of the State government of powers or jurisdiction conferred by the Constitution, or to regulate the methods of procedure in the courts of the State, which owe their existence to the Constitution, it is provided in section 12 of Article IV thereof as follows:

"The General Assembly shall have no power to deprive the Judicial Department of any power or jurisdiction which rightfully pertains to it as a coördinate department of the government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction which does not pertain to the Supreme Court, among the other courts prescribed in this Constitution, or which may be established by law, in such manner as it may deem best; provide also a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution."

This section is included in the Constitution in recognition of the "great, general, and essential principle of liberty and free government" declared in section 8 of Article I of the Constitution in these words: "The legislative, executive and supreme judicial powers of the government ought to be forever separate and distinct from each other."

By virtue of the foregoing principle, and because of the limitation upon the powers of the General Assembly contained in section 12 of Article IV, with respect to the Supreme Court, it has been held that the General Assembly is without power to enact rules of practice and procedure for the Supreme Court; its power in that respect is restricted to the enactment of such rules for the courts inferior to the Supreme Court. Rules of practice and procedure for the Supreme Court can be prescribed solely by the Court itself. In *Lee v. Baird,* 146 N. C., 361, it is said: "As the Constitution, Art. I, sec. 8, provides that 'the legislative, executive and supreme judicial powers of the government ought to be forever separate and distinct from each other,' the General Assembly can enact no rules of practice and procedure for this Court, which are prescribed solely by our rules of Court. The practice and procedure in the courts below the Supreme Court are prescribed by the Legislature, as authorized by the Constitution, Art. IV, sec. 12, except that as to such lower courts when the Legislature fails to provide the practice and procedure in any particular, the Court can do so." C. S., 1421.

It is well settled that the General Assembly is without power to prescribe or to regulate the rules of practice or procedure in the Supreme Court, in accordance with which it shall exercise its appellate jurisdic-

tion. The Court prescribes its own rules; these cannot be modified or regulated by statute. The same principle is applicable to the rules of practice and procedure in accordance with which the Court shall exercise its original jurisdiction with respect to claims against the State.

The original jurisdiction of the Supreme Court, invoked by the claimant in this proceeding, is derived from the same source as its appellate jurisdiction—the Constitution of 1868. Prior to said Constitution no jurisdiction with respect to claims against the State had been conferred upon or exercised by the Supreme Court. The provision for this jurisdiction appears first in the "Plan for Organization of the Judicial Department," reported to the Convention of 1868, by the committee on that subject. See Convention Journal 1868, p. 260. It appears as section 11 of said plan, and was adopted by the Convention on Friday, 28 February, 1868. It is now section 9 of Article IV. It is of interest to note that the Hon. William B. Rodman, a member of the Convention from Beaufort County, and afterwards an Associate Justice of this Court, was chairman of the committee which reported the Plan of Organization for the Judicial Department to the Convention. Judge Rodman was a member of this Court when the first cases, involving its jurisdiction with respect to claims against the State were considered and decided. He participated in such consideration and assented to the decisions made therein.

This Court has held in all the proceedings instituted since the adoption of the Constitution of 1868, in which the original jurisdiction with respect to claims against the State has been invoked, that such jurisdiction extended only to the decision of issues of law involved in such claims. It has declined to consider or to determine issues of fact, or to make decisions upon claims which involved only such issues. In *Bledsoe v. State,* 64 N. C., 392, decided at January Term, 1870, *Reade, J.,* writing for the Court, says:

"We are of the opinion that it was not contemplated that when a claim is presented against the State, there shall be a 'trial' of the facts in detail, but only that we should decide such questions of law as may seem to be involved, together with our own impression of the facts generally, so as to make our decision of the law intelligible. Especially must this be so, unless there shall be some legislation to enable us to find the facts in detail; for we have no jury, and if we had, it would be inconvenient and expensive to bring witnesses from all parts of the State; and depositions are always unsatisfactory. Probably, the provision in the Constitution was induced by the consideration that many claims would be presented; growing out of the events of the late war, and it was desired that they should have the consideration of the Court in aid of legislative action."

In *Miller v. State,* 134 N. C., 270, it appeared that the claim upon which the proceeding was instituted in this Court involved no issue of law, but only an issue of fact. In the opinion stating the grounds upon which the proceeding was dismissed, it is said: "We do not feel called upon, therefore, to make any recommendation to the General Assembly in the premises. If we should do so, the members of that body would have the right to feel justly offended· that we should seek to point out their duty to them in a matter where there was no law question involved."

In *Dredging Co. v. State,* 191 N. C., 243, we declined to make a decision upon the claim which was the basis of that proceeding, upon its appearing that said claim involved no issue of law. The proceeding was dismissed, after a review of the opinions filed for the Court in similar proceedings, all of which are to the effect that this Court will make no decision upon a claim involving only an issue of fact.

While the original jurisdiction of this Court, with respect to claims against the State, is confined to the consideration of claims which involve issues or questions of law, and does not extend to the consideration of claims involving issues or questions of fact only, it is sometimes necessary, or at least helpful, in order that the Court's decision upon an issue or question of law may be intelligible, that facts in controversy shall be first found or determined. In such cases the Court will adopt and follow such rules of practice and procedure as it shall deem best in each case. It cannot be controlled with respect to such rules by statute. Therefore, notwithstanding the provisions of C. S., 1410, the Court is not required to transfer every proceeding to enforce a claim against the State, to the Superior Court in order that issues of fact, joined on the pleadings, shall be tried by a jury. This procedure will not be followed where the only issue between the claimant and the State, as appears by the pleadings, is one of fact.

The statute, C. S., 1410, was first enacted by the General Assembly in 1868. It appears in the Code of Civil Procedure, as section 416, and was in effect at the date of the decision in *Bledsoe v. State, supra.* The statute is as follows:

"Procedure to enforce claims against the State. Any person having any claim against the State may file his complaint in the office of the Clerk of the Supreme Court, setting forth the nature and grounds of his claim. He shall cause a copy of his complaint to be served on the Governor, and therein request him to appear on behalf of the State, and answer his claim. The copy shall be served at least twenty days before application for relief shall be made to the Court. In case of an appearance for the State by the Governor, or any other authorized officer, the pleadings and trial shall be conducted in such manner as·the Court shall direct. If an issue of fact shall be joined on the pleadings, the Court

shall transfer it to the Superior Court or some convenient county for trial by a jury, as other issues of fact are directed to be tried, and the judge of the court before whom the trial is had, shall certify to the Supreme Court, at its next term, the verdict and the case, if any, made up and settled as prescribed in cases of appeal to the Supreme Court. If the State shall not appear in the action by any authorized officer, the Court may make up issues and send them for trial as aforesaid. The Supreme Court shall in all cases report the facts found, and their recommendation thereon, with the reasons therefor, to the General Assembly at its next term."

Insofar as this statute provides for and prescribes the procedure by which a claimant may invoke the original jurisdiction of this Court, conferred by the Constitution, with respect to his claim against the State, it is valid, and enforceable in all respects; when, however, a proceeding has been duly instituted and filed in this Court, in accordance with the provisions of the statute, the procedure by which the Court will thereafter exercise its power to hear and decide upon the claim is or question of law. When it appears that there is no issue or question of law is presented which can be intelligently decided, without determining facts in issue, the Court will proceed to hear and decide such issue or question of law. When it appears that there is not issue or question of law involved no decision will be made and the proceeding will be dismissed. When, however, in order to decide an issue or question of law involved, the Court deems it best to have issues of fact first determined, the Court may or may not follow the provisions of the statute with respect to a trial by jury of such issues. The statute is at most, in this respect, directory. It cannot be controlling. In view of the decisions of this Court, with respect to procedure, the purpose of the General Assembly was manifestly to provide for trial by jury, only when the Court should deem such trial helpful. Neither the answers of the jury to the issues of fact, nor the decision of the court upon the issues of law, would be binding on the General Assembly.

The claim upon which this proceeding was instituted arises out of a contract between the claimant and the State Highway Commission. The latter is an agency of the State, which is the real party to the contract, and therefore not subject to an action on the contract. *Carpenter v. R. R.,* 184 N. C., 400. Claimant contends that certain work done by him, in the performance of the contract, constitutes a "drainage ditch," within the meaning of the contract, and that under its terms he is entitled to payment for said work at one dollar per cubic yard for dirt and material excavated by him in doing said work. It is admitted that in doing this work, claimant excavated 150,133.54 cubic yards of dirt and material. The State, through its agency, the State Highway

Commission, contends that the work done by claimant constitutes a "borrow pit," and that under the contract claimant was entitled to only forty cents per cubic yard on account of the excavation. It is admitted that claimant has been paid by the Highway Commission the amount due at the rate of forty cents. The only issue involved in the controversy is whether the work done by claimant for which he has filed his claim constitutes a "drainage ditch" or a "borrow pit." This is, we think, clearly an issue of fact, which this Court will not undertake to determine. There is no issue or question of law involved in the claim, the decision of which would be affected by a finding of the fact involved in the issue. We therefore decline to make any decision relative to the claim for transmission to the General Assembly.

It may be noted that the contract includes a provision to the effect that all disputes and misunderstandings between the parties thereto, relative to the construction and meaning of its provisions, and also relative to the performance by either of the parties thereto of said contract, shall be referred to the engineer in charge of the work, and that his decision with respect to such disputes and misunderstandings shall be final. The controversy between the claimant and the State Highway Commission has been decided against the contention of the claimant by the engineer in charge. His decision, by the express terms of the contract, is final. See *Chemical Co. v. O'Brien,* 173 N. C., 618.

For the reasons stated in this opinion, the proceeding is

Dismissed.