WELBORN PLUMBING AND HEATING CO., INC., v. RANDOLPH COUNTY BOARD OF EDUCATION.

(Filed 21 September, 1966.)

**1. Contracts § 33—**

Ordinarily, provisions in a construction contract that all disputes and misunderstandings between the parties relative to the performance of the contract should be determined by the architect or engineer and that his decision should be conclusive upon the parties, is valid in the absence of fraud or mistake, or unless the architect, unknown to the contractor, has guaranteed to keep the cost of the work below a stated sum.

**2. Same— Subcontractor may not recover of owner sums withheld in accordance with decision of architect binding on parties under the contract.**

Where the stipulations and evidence disclose that the construction contract in question provided that costs caused by defective work should be borne by the party responsible for same, that payments might be withheld by the owner in part or in whole on account of conditions not complied with, and that the decision of the architect in regard to controversies arising out of the performance of the contract should be final and conclusive on the parties, and that the architect authorized the withholding of a certain sum from payments to a subcontractor to compensate the main contractor for damages to a wall constructed by the main contrac-

tor, and that the damage to the wall resulted from the failure of the sub-contractor to take proper precaution when he dug a ditch parallel to the wall in wet earth, *held*, the subcontractor may not recover of the owner the amount withheld, since, under provisions of the contract the decision of the architect in regard thereto was final, there being no allegation or evidence of fraud or of gross mistake, or that the architect, unknown to the subcontractor, had guaranteed to keep the cost of the work below a stated sum.

**3. Contracts § 1—**

Ordinarily, when competent parties who are on an equal footing enter into an agreement on a lawful subject fairly and honorably, the law will not inquire as to whether the contract was good or bad or whether it was wise or foolish.

**4. Trial § 22—**

When it appears affirmatively from the stipulations of the parties and all the evidence that plaintiff, as a matter of law, is not entitled to recover, defendant's motion for judgment of involuntary nonsuit should be allowed.

PLESS and BRANCH, J.J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Riddle, S.J.,* 1 March 1965 Session of RANDOLPH. Docketed and argued as Case No. 607, Fall Term 1965. Docketed as Case No. 602, Spring Term 1966, and docketed as Case No. 604, Fall Term 1966.

Civil action to recover the sum of $1,541.58, balance allegedly due on a contract to install heating facilities in an addition to Archdale Public School building in Randolph County for the sum of $9,580.

Defendant in its answer admits that on 12 January 1961 plaintiff and defendant entered into a contract with each other providing, *inter alia,* that plaintiff was to install heating facilities in an addition to Archdale Public School, which was to be constructed according to plans and specifications submitted by defendant through its architects. It further admits in its answer that it was to pay plaintiff for this work the sum of $9,580 and that it has paid plaintiff for this work the sum of $8,038.42. As a further answer and defense to plaintiff's action, it avers in substance: In the course of its work, plaintiff excavated a ditch in a place, at a time, and under such circumstances as to cause damages in the sum of $1,541.58 to the general structure of the new addition to Archdale Public School, and it was authorized and directed by its architect, who had complete supervision and responsibility for the work, to pay said sum to L. S. Bradshaw & Sons, General Contractors, to remedy the damages caused by plaintiff. Plaintiff breached said contract by its de-

fective and ill-timed work in excavating the ditch causing damages in the sum of $1,541.58. It, through its officers and agents, and through its architects and attorneys, made demands upon plaintiff for the fulfillment of its contract in the respects herein referred to, and plaintiff failed and refused to abide by the terms of its contract. Plaintiff has been paid and fully compensated for all of the work accomplished by it on the Archdale Public School, and defendant is not indebted to plaintiff in any sum whatever. The contract entered into by and between the parties required, *inter alia,* that plaintiff would maintain continuously adequate protection and exercise reasonable precautions for the safety of adjacent property, and that plaintiff was not to endanger any work by cutting, digging or otherwise, and that plaintiff would be responsible for any damages resulting from its failure or improper construction or operation, and would bear all costs caused by defective work for which it was responsible. We have omitted from the further answer and defense other things the plaintiff was required to do under the contract, which are irrelevant here.

The parties waived trial by jury. G.S. 1-184 *et seq.*

From a judgment entered by Judge Riddle that plaintiff have and recover from the defendant the sum of $770.79, defendant appeals.

*Miller & Beck by G. E. Miller and Thomas L. O'Briant for defendant appellant.*

*Bencini & Wyatt by Joe D. Floyd for plaintiff appellee.*

PARKER, C.J. Before Judge Riddle the parties stipulated: (1) Defendant, as the governmental agency of Randolph County, North Carolina, charged with the responsibility of constructing and maintaining public schools in said county, has authority to enter into contracts for these purposes. On 12 January 1961 the defendant entered into a contract with plaintiff providing, *inter alia,* that plaintiff was to install heating facilities in the addition to the Archdale Public School, which was to be constructed according to plans and specifications submitted by defendant through its architects; (2) the work contracted to be performed by plaintiff for defendant in connection with the Archdale Public School is governed by the contract between the parties dated 12 January 1961, the proposal of the same date of plaintiff to defendant for the accomplishment of the work proposed, the contract and the proposal of plaintiff each referring to and incorporating therein "Contract Documents" as prepared by the architect, John James Croft, Jr., and referred to as

"General Conditions," Section 00-G1, consisting of seven pages, and "Heating Work" referred to as Section 38-011, consisting of two pages; (3) defendant deducted the sum of $1,541.58 from the contract price of $9,580, being the amount approved by the architect for payment to the general contractor for the protection and repair of damage; and (4) the wall in question was a foundation bearing wall with earth filling inside the building and backfilling on the outside of the building.

This evidence seems undisputed: The building plans for the addition to Archdale Public School called for the construction of three new walls and the use of one wall of the existing building. The particular wall involved in the instant case was a new foundation wall some 15 feet in height from its base "with earth filling inside the building and backfilling on the outside of the building." Under the contract plaintiff was to install heating lines adjacent to the outside of this foundation wall along its entire length. To install the heating lines plaintiff had to dig a ditch along the entire length of this foundation wall. At the time plaintiff dug the ditch the general contractor had finished the wall, and had mounted on it the concrete frames which would support the roof of the building; the wall was up and the roof was partially on.

Plaintiff's evidence, considered in the light most favorable to it, tends to show that it performed its work according to the terms of its contract with defendant, that defendant is indebted to it in the amount sued for, to wit, $1,541.58, which was deducted from the contract price by order of the architect, John James Croft, Jr.

Defendant's evidence tends to show that for a period of three days prior to plaintiff's digging the ditch on the outside of the foundation wall there had been constant rainfall, and as a result thereof the ground was extremely wet and muddy, and plaintiff was guilty of negligence in the manner in which it dug the ditch too close to the foundation wall, and guilty of negligence also in digging the ditch under the conditions of wetness and mud, and as a proximate result thereof the foundation wall cracked and bowed out some two or three inches; that the architect, John James Croft, Jr., knew certain work had to be done by the general contractor to correct the damaged condition of the new foundation wall, and that he authorized the payment by defendant of $1,541.58 from the contract price of $9,580 to the general contractor for this work, and defendant deducted this amount from the contract price. The first witness for plaintiff was Clyde B. Welborn, its president. Just before defendant's counsel, Mr. Miller, began his cross-examination of this witness, the court asked Mr. Miller this question: "Do you admit every-

thing was alright *(sic)* about the work except causing this wall to fall, is that right?" Mr. Miller replied: "Yes sir."

Defendant assigns as error the denial by the court of its motion for judgment of involuntary nonsuit made at the close of all the evidence. It contends as follows: (1) It deducted the sum of $1,541.58 from the contract price of $9,580, being the amount approved by the architect for payment to the general contractor for the protection and repair of damage to the foundation bearing wall, and that the decision of the architect under the contract entered into by and between the parties is final and conclusive, and it is not indebted to plaintiff in any amount; and (2) "the evidence construed in a light most favorable to the plaintiff clearly establishes plaintiff's negligence in performance of its contract, which negligence constituted a breach of contract precluding recovery on the express contract" and "there is no allegation in the pleadings or evidence in the record which recovery *(sic)* may be had under any other theory of law."

The contract entered into by and between the parties here contains the following as to "Status of the Architect":

"Architect is Owner's authorized representative. He shall have general supervision of work, and authority to stop work to insure its proper execution.

"The Architect shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. He shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract, and shall decide all questions which may arise in relation to said work and the construction thereof. His estimates and decisions shall be final and conclusive.

"The Architect shall decide the meaning and intent of any portion of the specifications and of any plans or drawings where the same may be found obscure or be in dispute.

"Any differences or conflicts in regard to their work which may arise between the Contractor under this contract and other contractors performing work for the Owner shall be adjusted and determined by the Architect.

"The Architect shall certify to Owner when payments to Contractor are due and amounts to be paid. The Architect shall make decisions on all claims of the Contractor."

"In building and construction contracts the parties frequently provide that the completion, sufficiency, classification, or amount of

the work done by the contractor shall be determined by a third person, usually an architect or engineer. Such stipulations which, in their origin, were designed to avoid harassing litigation over questions that can be determined honestly only by those possessed of scientific knowledge, have generally been held valid. This is true even though the architect or engineer is employed by the owner unless unknown to the contractor, he has guaranteed to keep the cost of the work below a certain sum." 13 Am. Jur., 2d, Building, Etc. Contracts, § 32.

This is said in 13 Am. Jur., 2d, Building, Etc. Contracts, § 34:

> "Although plain language in the contract is required in order to make the decision or certificate of an architect or engineer acting thereunder final and conclusive, it may be stated generally that the decision of the architect or engineer is conclusive as to any matter connected with the contract if the parties, by any stipulation, constitute the architect or engineer the final arbiter of such matter as between the parties. Accordingly, where the contract provides that the work shall be done to the satisfaction, approval, or acceptance of an architect or engineer, such architect or engineer is thereby constituted sole arbitrator between the parties, and the parties are bound by his decision, in the absence of fraud or gross mistake. The same rule applies where it is provided that payments shall be made only upon the certificate of the architect.
>
> "It is also clear that where the parties stipulate, expressly or in necessary effect, that the determination of the architect or engineer shall be final and conclusive, both parties are bound by his determination of those matters which he is authorized to determine, except in case of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. The reason underlying this rule is that under such circumstances the contract makes the architect or engineer the arbitrator, and his determination can be attacked only in the same manner as that of any other arbitrator. On the other hand, where the stipulations are such that the meaning to be gathered therefrom is that the architect's or engineer's certificate shall not be final, the parties are not bound by the certificate."

See annotations in 54 A.L.R. 1255 and 110 A.L.R. 137, where cases from many jurisdictions are analyzed.

These principles find support in our cases. In *Chemical Co. v. O'Brien*, 173 N.C. 618, 92 S.E. 594, the Court said: "The agreement, in several places, makes the final certificate of the architect conclu-

sive as to a completion of the building in accordance with the contract; and this certificate having been fully and formally given, the authorities are that it was not afterwards open to the architect or the builder to withdraw it nor to question or impeach it as to observable defects or those which were or could have been discovered by the architect in the proper performance of his duties except in case of fraud or mistake so palpable as to indicate bad faith or gross neglect." The following application of the law is found in *Lacy v. State,* 195 N.C. 284, 141 S.E. 886: "It may be noted that the contract includes a provision to the effect that all disputes and misunderstandings between the parties thereto, relative to the construction and meaning of its provisions, and also relative to the performance by either of the parties thereto of said contract, shall be referred to the engineer in charge of the work, and that his decision with respect to such disputes and misunderstandings shall be final. The controversy between the claimant and the State Highway Commission has been decided against the contention of the claimant by the engineer in charge. His decision, by the express terms of the contract, is final."

There is no allegation or evidence in this case to raise an issue of fraud or gross mistake as in *McDonald v. MacArthur,* 154 N.C. 122, 69 S.E. 832. There is neither allegation nor proof in the record that John James Croft, Jr., employed as architect by defendant had, unknown to plaintiff, guaranteed to keep the cost of the work below a certain sum.

The parties stipulated before Judge Riddle that the work contracted to be performed by plaintiff for defendant in connection with the Archdale Public School is governed by the contract between the parties dated 12 January 1961; and that defendant deducted the sum of $1,541.58 from the contract price of $9,580, being the amount approved by the architect for payment to the general contractor for the protection and repair of damage.

The contract entered into between the parties, *inter alia,* agreed that "costs caused by defective, mishandled, or ill-timed work shall be borne by party responsible for same"; that plaintiff would "continuously maintain adequate protection, and exercise reasonable precautions for safety of adjoining property, work, employees on work, and public," and "not endanger any work by cutting, digging, or otherwise," and "make good damage, injury, or loss sustained; save Owner harmless." The parties further agreed in the contract that "payments may be withheld in part of *(sic)* whole on account of (a) conditions of contract not complied with, . . . (e) defective work not remedied, . . . (j) unsettled questions between parties relative to this contract or between contractors involved in work."

The contract also provides: "The Architect shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. He shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract, and shall decide all questions which may arise in relation to said work and the construction thereof. His estimates and decisions shall be final and conclusive."

Plaintiff finds itself in a helpless position, but it is a position of its own making. It agreed in the contract to be responsible for any damage, injury, or loss sustained as a result of its work. It further agreed that the architect should decide such question of damages or any other question which might arise in relation to the work, and that the architect's decision should be final and conclusive. "Ordinarily, when parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honorably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish." *Roberson v. Williams,* 240 N.C. 696, 83 S.E. 2d 811.

The dispute involved in this case was resolved pursuant to the agreement between the parties. It having been made to appear affirmatively from the stipulations and all the evidence that as a matter of law plaintiff is not entitled to recover, defendant's motion for judgment of involuntary nonsuit should have been allowed. *Jenkins v. Fowler,* 247 N.C. 111, 100 S.E. 2d 234; *Walker v. Story,* 256 N.C. 453, 124 S.E. 2d 113.

Reversed.

PLESS and BRANCH, JJ., took no part in the consideration or decision of this case.