USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1354 UNITED STRUCTURES OF AMERICA, INC. AND UNITED STATES OF AMERICA FOR THE USE OF UNITED STRUCTURES OF AMERICA, INC., Plaintiffs, Appellees, v. G.R.G. ENGINEERING, S.E. AND NEW HAMPSHIRE INSURANCE COMPANY, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ John E. Mudd with whom Cordero, Miranda & Pinto was on brief for _____________ ________________________ appellants. Mark S. Finkelstein with whom Elizabeth D. Alvarado, Shannon, ____________________ ______________________ ________ Martin, Finkelstein & Sayre, David P. Freedman, and O'Neill & Borges ____________________________ _________________ ________________ were on brief for appellee United Structures of America, Inc. ____________________ November 18, 1993 ____________________ BREYER, Chief Judge. The plaintiff, having ____________ supplied steel to a now bankrupt subcontractor, has sued the general contractor, seeking to recover payment for the steel from the bond that a federal statute, the Miller Act, requires certain general contractors to provide. 40 U.S.C. 270a-270b. The general contractor says the steel was defective, and it wants to deduct from the promised purchase price the amount that it says it had to spend to cure the defects. The district court, relying upon a Ninth Circuit case, United States ex rel. Martin Steel Constructors v. __________________________________________________ Avanti Steel Constructors, 750 F.2d 759 (9th Cir. 1984), __________________________ cert. denied sub nom. Harvis Construction v. United States ______________________ ___________________ _____________ ex rel. Martin Steel Constructors, 474 U.S. 817 (1985), held _________________________________ that where the supplier has a contract with a subcontractor but not with the general contractor, the Miller Act forbids the general contractor from taking such "offsetting" deductions. We disagree with the Ninth Circuit. We therefore vacate the district court's judgment. I Background __________ The Miller Act requires general contractors working on federal government projects to furnish a payment bond "for the protection of all persons supplying labor and material" to the project. 40 U.S.C. 270a(a)(2). It permits a supplier who has a "direct contractual relationship with a subcontractor but no contractual relationship . . . with the contractor furnishing" the bond to sue on the bond for "the balance . . . unpaid at the time of institution" of the suit, and to recover "judgment for the sum or sums justly due him," as long as he complies with certain notice requirements. Id. 270b(a). Puerto Rico's ___ "Little Miller Act" sets up a similar scheme for work on projects undertaken by the Puerto Rican government. 22 L.P.R.A. 47, 51. The plaintiff, United Structures of America ("United"), supplied steel to a subcontractor on two projects, one for the United States government at Roosevelt Roads Naval Station, the other for the Puerto Rican government at Hato Rey Police Headquarters. Defendant G.R.G. Engineering ("GRG") was the general contractor on both projects. The subcontractor did not pay United in full. When the subcontractor went bankrupt, United gave GRG proper notice, and then sued GRG (and GRG's insurer) on the payment bond for the amounts it believed were still due, approximately $105,000 for the Roosevelt Roads project and $177,000 for the police station project. -3- 3 United moved for summary judgment, attaching various bills and receipts in support of its claims. GRG opposed the summary judgment motion. An affidavit (and a few working papers) of Luis Marin Aponte, a GRG partner and licensed engineer, constituted GRG's only effort to "set forth specific facts showing that there is a genuine issue" that might warrant a trial, Fed. R. Civ. P. 56(e). Marin's affidavit said that GRG did not owe United any money because (1) United engaged in a fraudulent billing practice known as "front loading"; (2) GRG had to spend "$88,887 . . . due to" United's "non-compliance with the specifications of the equipment supplied" for the Roosevelt Roads project; and (3) GRG had to spend an additional "$107,622 . . . to correct defects and/or deficiencies in the materials" that United "furnished" for the police station project. The district court granted summary judgment in favor of United, holding (1) that this affidavit failed to provide, or to point to, any specific factual evidence supporting GRG's "front loading" theory; (2) that the evidence regarding allegedly defective steel was irrelevant because the law does not give GRG "the right to assert a set-off defense"; and (3) that GRG, in any event, had not "offered specific evidence in support of" its allegations, -4- 4 "for example, an affidavit prepared by an engineer testifying that the materials were indeed defective." GRG then moved for reconsideration. It pointed out that Marin, its affiant, was indeed a licensed engineer, and it provided a few additional documents and bills suggesting possible defects and related costs. The district court, although it acknowledged Marin's professional qualifications, denied the motion for reconsideration, solely on the basis of the Ninth Circuit's holding that the Miller Act does not "allow[] a set-off defense by a general contractor not in privity with" a supplier. Avanti, 750 ______ F.2d at 762. GRG now appeals, claiming primarily that the district court and the Ninth Circuit have not correctly interpreted the Miller Act with regard to the "set-off" issue. We agree with GRG. II Analyzing the "Set-off" _______________________ In Avanti, the Ninth Circuit considered a set of ______ facts virtually identical to the facts before us. A subcontractor on a government project bought steel from a supplier; the subcontractor went bankrupt; the supplier sued the general contractor on its Miller Act bond; and the -5- 5 general contractor asserted, as a defense, a claim of damages arising from "late and defective shipments." Avanti, 750 F.2d at 760. The Ninth Circuit held that "a ______ set-off defense is not available in a Miller Act claim in the absence of privity." It added that "allowing a set-off defense by a general contractor not in privity with [the supplier] would unduly burden the enforcement of the rights created by the Act." Id. at 762. ___ We disagree with the Ninth Circuit. We believe it appropriate to draw a distinction that the Ninth Circuit did not draw, namely a technical distinction between what the law normally calls a "setoff" (or "set-off," or "offset"), and what it calls "recoupment." The law dictionary defines a "setoff" as a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of ____________ plaintiff's cause of action." Black's Law Dictionary 1230 ____________________________ (5th ed. 1979) (emphasis added). If Smith sues Jones for $10,000 for grain that Smith supplied, and Jones seeks to reduce the judgment by $5,000 representing Smith's (unrelated) unpaid rental of Jones' summer cottage, Jones is seeking a setoff. "Recoupment," on the other hand, is "a ______ reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant -6- 6 arising out of the same transaction." Id. at 1147 (emphasis ____________________________________ ___ added). If Smith sues Jones for $10,000 for grain that Smith supplied, and Jones seeks to reduce the judgment by $5,000 representing Jones' expenditure to dry out Smith's (defectively) wet grain (or the cost of buying replacement grain, or the grain's lost value), Jones is seeking a recoupment. __________ This distinction, although somewhat technical, is well established in the law. See, e.g., In re B & L Oil _________ _________________ Co., 782 F.2d 155, 157 (10th Cir. 1986); 1 David G. Epstein ___ et al., Bankruptcy 6-45, at 703 (1992) ("setoff involves mutual debts arising from unrelated transactions and _______________________ recoupment covers reciprocal obligations arising out of the same transaction") (footnotes omitted); Michael E. Tigar, ________________ Comment, 53 Cal. L. Rev. 224, 225 n.9 (1965) ("'Recoupment is contradistinguished from setoff in these . . . essential particulars: 1st. In being confined to matters arising out of, and connected with, the transaction or contract upon which the suit is brought . . . .'" (quoting Waterman, Set- Off, Recoupment and Counterclaim 480 (2d ed. 1872))). See ___ generally 20 Am. Jur. 2d Counterclaim, Recoupment, and _________ ______________________________ Setoff 11, 16-18 (1965). ______ -7- 7 This technical legal terminology does not necessarily reflect ordinary usage. After all, a grain buyer who wants to deduct from the contract price the cost of drying the defectively wet grain might say that he simply wants to "set off" the drying costs against the contract price. Lawyers, too, might fall into this manner of speaking, for often the technical legal distinction does not matter. See, e.g., B & L Oil, 782 F.2d at 157 ("Modern __________ __________ rules of pleading have diminished the importance of the common-law distinctions surrounding recoupment and its companion, setoff."); 20 Am. Jur. 2d 10 (1965) ("The distinctions between . . . recoupment and setoff are no longer of much importance . . . ."). In a few specialized circumstances, however, the difference takes on more significance. One such circumstance is bankruptcy. The unusual nature of bankruptcy proceedings means that certain devices, ordinarily available to creditors seeking to recover from debtors, may be unavailable when the debtor is in, or near, bankruptcy. Among these devices is setoff, which may be used by a creditor against an insolvent debtor who later files for bankruptcy only under the circumstances described in 11 U.S.C. 553, and against a debtor already in -8- 8 bankruptcy only by seeking relief from the automatic stay, 11 U.S.C. 362(a)(7). See 1 Epstein et al., supra, 3- ___ _____ 15, 6-38 to 6-44. The reason is that the bankruptcy laws are generally designed to maximize the debtor's assets for the benefit of all creditors, and allowing a creditor to invoke setoff might allow the creditor an unfair advantage over other creditors (the creditor, by reducing the debt he owes the debtor dollar for dollar against the debt owed him by the debtor, receives full value for the latter simply because he owed money to the debtor). Thus, returning to our earlier example, if Smith is in bankruptcy and Jones is permitted to reduce his $10,000 grain debt to Smith by $5,000 because of the unpaid cottage rental, Jones has (1) deprived the estate of $5,000 it would otherwise have had to benefit other creditors; and (2) received full value on his $5,000 claim against Smith, even though other creditors might not receive full value. Recoupment, on the other hand, is not a mechanism which reduces mutual debts "for the sake of convenience," id. 6-45, at 704 (describing setoff), but rather is "in ___ the nature of a defense" and is intended to "permit . . . judgment to be rendered that does justice in view of the one transaction as a whole." Rothensies v. Electric Storage __________ _________________ -9- 9 Battery Co., 329 U.S. 296, 299 (1946); see also 4 Collier on ___________ ________ Bankruptcy 553.03, at 553-17 (Lawrence P. King, ed., 15th ed. 1993) (point of recoupment is to "arriv[e] at a just and proper liability" on the plaintiff's claim). As such, when a debtor in bankruptcy seeks to recover from a creditor whose claim against the debtor arises out of the same transaction, allowing the creditor to recoup damages simply allows the debtor precisely what it is due when viewing the transaction "as a whole." So although it might not make sense to allow Jones to claim a setoff in Smith's ______ bankruptcy, allowing Jones to recoup the $5,000 that he had ______ to spend to dry out Smith's defective grain seems fair to all concerned, perhaps because a debtor has, in a sense, no right to funds subject to recoupment. See In re Holford, ___ ______________ 896 F.2d 176, 179 (5th Cir. 1990). This explains why recoupment is not expressly regulated by the Bankruptcy Code; some courts even find recoupment unaffected by the automatic stay. See id.; 1 Epstein et al., supra, 6-45, ___ ___ _____ at 712 & n.36. Whether a creditor's action against a bankrupt debtor is characterized as a setoff or a recoupment will, therefore, have important effects on the creditor's ability to prosecute the action. -10- 10 The Miller Act seems to us to offer another situation in which one should distinguish setoff from recoupment. The language of the Act permits a supplier to recover, not the full contract price, but the "sums justly due him." 40 U.S.C. 270b(a). In our view, the aim of recoupment, "do[ing] justice in view of the one transaction as a whole," Rothensies, 329 U.S. at 299, would seem to __________ match the statute's requirement of determining the sums "justly due" a supplier, making recoupment an appropriate defense in Miller Act cases. Indeed, we do not see how the full contract price of goods supplied can possibly be "justly due" a person who supplied defective goods. Setoff, on the other hand, has less bearing on whether a particular sum is "justly due" the claimant, since setoff functions mostly as a convenient method of dealing with mutual, unrelated debts. Since a true setoff is not before us, however, we need only note the difference and need not go beyond the subject of recoupment to consider when or whether setoff is unavailable under the Miller Act. Further, the policies underlying the Miller Act seem to permit recoupment. The Act is intended "to protect those whose labor and materials go into public projects," Clifford F. MacEvoy Co. v. United States ex rel. Calvin _________________________ ______________________________ -11- 11 Tomkins Co., 322 U.S. 102, 107 (1944), but this _____________ "protect[ion]" does not include payments to which the supplier's underlying contract does not entitle him. We know this is true because a Miller Act claim brought by a subcontractor who is in privity with the general contractor __ "is subject to reduction" for "defective articles or work," even though the subcontractor's "labor and materials" were as much a part of the project as were those of an out-of- privity supplier. 8 John C. McBride & Thomas J. Touhey, Government Contracts 49.490[4], at 49-658 (1993); see, ____ e.g., United States ex rel. Browne & Bryan Lumber Co. v. ____ ___________________________________________________ Massachusetts Bonding & Ins. Co., 303 F.2d 823, 828 (2d Cir. ________________________________ 1962), cert. denied sub nom. Ove Gustavsson Contracting Co. _____________________ ______________________________ v. Browne & Bryan Lumber Co., 371 U.S. 942 (1962); United ___________________________ ______ States ex rel. Acme Maintenance Engineering Co. v. _______________________________________________________ Wunderlich Contracting Co., 228 F.2d 66, 68 (10th Cir. 1955) __________________________ (defense of defective workmanship available against subcontractor; failed in this case because general contractor did not meet its burden of proof). We do not understand why the existence or nonexistence of privity of contract should make any difference with regard to these general policies. Nor do we understand how permitting a general contractor to reduce a supplier's claim by the -12- 12 amount that the general contractor spent remedying the supplier's failure to comply with his contract somehow "unduly burdens" the supplier's Miller Act rights. But cf. ________ Avanti, 750 F.2d at 762. On the contrary, disallowing ______ recoupment would seem to give the supplier "rights" to which his contract does not entitle him. In short, neither United nor the Avanti court ______ itself has pointed to any policy of the Miller Act which would be served by the Avanti rule, nor can we imagine what ______ such a policy would be. We have examined the legislative history of the Miller Act, and the cases and treatises discussing it, but we have found nothing that suggests the conclusion reached in Avanti. The materials and policies we ______ have considered, and the language of the statute, point the other way. For these reasons, we conclude that the general contractor in this case is entitled to assert a recoupment type of defense. Insofar as GRG shows that United delivered defective goods that failed to meet contract specifications, and proves reasonably foreseeable damages caused by those defects, GRG may reduce the award to United by the amount of those damages. -13- 13 United also asserted a claim under Puerto Rico's Little Miller Act (for the police station project). Our review of that Act has suggested no reason why the result should be different. We note our belief that "compensation," the Puerto Rican equivalent of setoff discussed at length by the parties and the district court, see 31 L.P.R.A. 3221-22; Garcia Mendez v. Vazquez Bruno, ___ _____________ _____________ 440 F. Supp. 985, 988-89 (D.P.R. 1977), is as inapplicable to this case as setoff itself, since compensation, like setoff, is primarily a device allowing the convenient simplification of relations between mutually indebted parties. See Walla Corp. v. Banco Comercial de Mayaguez, ___ ___________ ____________________________ 114 D.P.R. 216, transl. at 285 (1983). III Application of the Law to This Case ___________________________________ Applying our interpretation of the law to the record before us, we conclude the following: First, the district court correctly granted summary judgment in respect to GRG's "front loading" claim. We find no specific facts in GRG's opposition to summary judgment that demonstrate a "genuine" or "material" issue of fact with respect to that claim. -14- 14 Second, we believe that the district court's grant of summary judgment, at least by the time it denied the motion for reconsideration, rested upon an erroneous view of the law. The district court, therefore, should reconsider the motion. The summary judgment record, however, is somewhat confused because GRG presented some pieces of evidence in its initial opposition and other pieces of evidence when it moved for reconsideration. Under these circumstances, we shall ask the district court to begin the summary judgment proceedings anew, so that the parties and the court may proceed under the proper legal standard. GRG, however, may raise only the issue of recoupment. In all other respects, the court will assume that United is entitled to summary judgment. The judgment of the district court is vacated. The plaintiff may file a new motion for summary judgment in the district court. The defendant may not oppose that motion on the issue of liability, but may contest damages based on the principles of recoupment as outlined in this opinion. So ordered. ___________ -15- 15