TOP LINE CONSTRUCTION CO., PLAINTIFF v. J.W. COOK & SONS, INC., DEFENDANT AND THIRD PARTY PLAINTIFF v. JOHN WHITE CONSTRUCTION COMPANY, LTD., THIRD PARTY DEFENDANT

No. 9413SC498

(Filed 4 April 1995)

1. **Contracts § 69 (NCI4th)— masonry subcontract—unacceptable work—architect as judge—summary judgment for contractor proper**

Where a subcontract between plaintiff and defendant general contractor designated the owner's architect as the judge of acceptable work, the parties were bound by his decision that masonry work performed by plaintiff was unacceptable; therefore, whether the masonry work was completed to project specifications and inspected and approved by defendant on a weekly basis was irrelevant, defendant was entitled to recover from plaintiff the amount it was backcharged by the owner, and the trial court properly entered summary judgment for defendant.

**Am Jur 2d, Building and Construction Contracts §§ 32 et seq.**

## 2. Contracts § 111 (NCI4th)— rescission of subcontract— issue of fact as to mutuality—summary judgment improper

The trial court erred in granting summary judgment for defendant against third-party defendant for the amount defendant was backcharged by a building owner for masonry work, since there was a genuine issue of fact as to whether there was a mutual termination or rescission of the subcontract between defendant and third-party defendant.

### Am Jur 2d, Contracts § 539 et seq.

Appeal by plaintiff and third party defendant from judgment entered 12 November 1993 by Judge Orlando F. Hudson in Columbus County Superior Court. Heard in the Court of Appeals 26 January 1995.

On 1 March 1990, plaintiff and defendant executed a purchase order subcontract in which plaintiff agreed to furnish certain labor, materials and equipment necessary to complete all masonry work in the construction of Western Harnett Middle School. Plaintiff's invoices were paid on a weekly basis minus a ten percent retainage fee held pursuant to the contract. Plaintiff alleged that defendant inspected all masonry work on a weekly basis before making payment. On 20 November 1990, upon completion of the project, plaintiff submitted a bill of $47,666.21 to defendant for the amount of the retainage defendant held pursuant to the subcontract. Defendant refused to pay. Plaintiff further alleged that pursuant to defendant's request, plaintiff returned to the jobsite and spent another $25,000 upgrading the masonry work to defendant's specifications. Defendant contended that the masonry work was still unsatisfactory and refused to pay. Plaintiff then filed suit against defendant to recover the amount due on its retainage bill.

Defendant's answer included a counterclaim against plaintiff and a third party complaint against John White Construction Co. (hereinafter third party defendant). Defendant alleged in its counterclaim against plaintiff that plaintiff did not perform the masonry work consistent with the requirements of the subcontract. As part of its complaint, defendant included a letter from the owner's representative, architect Dan MacMillan, in which he stated that the masonry work was the "worst he had ever seen" in his 40 years as an architect. Defendant alleged that it backcharged the expenses necessary to complete the project against plaintiff's retainage. After those

expenses had been deducted, only $6,808.71 remained due to plaintiff on the retainage. Defendant further alleged that the School Board (hereinafter owner) backcharged defendant an additional $48,750 for the defective masonry work on the project. Defendant contended that after offsetting the $6,808.71 remaining on plaintiff's retainage, plaintiff still owed defendant $41,941.29.

Defendant's third party complaint alleged that prior to defendant's subcontract with plaintiff, third party defendant had entered into a similar subcontract with defendant on 17 May 1989. On 1 March 1990, third party defendant asked defendant to cancel the subcontract and retain another subcontractor to complete the work. Defendant responded that the subcontract was in default and that defendant would retain another subcontractor to complete the work. Defendant alleged that third party defendant was liable to defendant for $41,941.29.

On 15 September 1993, defendant filed a motion for summary judgment. On 12 October 1993, third party defendant also filed a motion for summary judgment. The trial court granted defendant's motion for summary judgment on all of its claims and entered judgment for defendant in the amount of $41,941.29 plus $7,648.76 in attorney's fees against plaintiff and third party defendant jointly and severally. Plaintiff and third party defendant appeal.

*Soles, Phipps, Ray and Prince, by Sherry Dew Prince, for plaintiff-appellant.*

*Thomas Wayne White for third-party defendant-appellant.*

*Mark C. Kirby for defendant-appellee.*

EAGLES, Judge.

Plaintiff and third party defendant contend that the trial court erred in granting defendant's motion for summary judgment. After careful review of the record and briefs, we affirm as to plaintiff and reverse as to third party defendant.

[1] We first address plaintiff's appeal. Summary judgment should only be granted when the pleadings, affidavits and other evidentiary materials presented to the trial court show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56. Article 8 of the subcontract here states:

Should the Subcontractor [plaintiff], at any time . . . refuse to follow plans and specifications, or fail in any respect to prosecute the covenant on its part to be performed, the Contractor [defendant] shall have the right . . . to terminate this contract in whole or in part. The Architect/Engineer and/or Owner's Representative shall be the judge of the acceptable work and settlement shall be made to this point on this basis. In that event, Contractor [defendant] shall provide the necessary material, labor, etc. to complete the contract in whole or in part and charge the cost thereof to the Subcontractor [plaintiff] crediting or debiting his account as the case may be when the work under this contract is fully completed and accepted. The Subcontractor [plaintiff] expressly agrees to accept and to abide by the above clause in this connection and further agrees that . . . nothing herein shall affect the right of the Contractor [defendant] to recover damages from the Subcontractor [plaintiff] for delay or malperformance or nonperformance of this contract.

In support of its motion for summary judgment, defendant filed the affidavit of the owner's representative/architect, Dan MacMillan, who stated that the masonry work performed by plaintiff and third party defendant was the worst "I have ever observed in my more than forty-two (42) years as a licensed architect." In response to defendant's motion, plaintiff submitted the affidavit of John C. White, III. White stated that he was the president of John White Construction Company prior to its dissolution and that he was currently the manager of plaintiff. White stated that all the masonry work on the project was completed to project specifications and that defendant inspected and approved the work on a weekly basis prior to payment. Plaintiff contends that MacMillan's credibility is at issue and cannot be resolved on summary judgment. We disagree.

The subcontract designates MacMillan as the judge of acceptable work. "[W]here the contract provides that the work shall be done to the satisfaction, approval, or acceptance of an architect or engineer, such architect or engineer is thereby constituted sole arbitrator between the parties, and the parties are bound by his decision, in the absence of fraud or gross mistake." *Welborn Plumbing and Heating Co. v. Randolph County Board of Education*, 268 N.C. 85, 90, 150 S.E.2d 65, 68 (1966) (quoting 13 Am. Jur. 2d *Building, Etc. Contracts*, § 34 (1964)). There is no evidence here of fraud or gross mistake. Plaintiff expressly agreed to be bound by this clause and defendant retained its right to recover damages for malperformance of the con-

tract. Accordingly, there are no genuine issues of material fact. MacMillan's judgment as to the quality of the masonry work is final as between the parties and defendant is entitled to recover from plaintiff the amount it was backcharged by the school board. Summary judgment was properly entered against plaintiff.

[2] We conclude, however, that the trial court erred in granting summary judgment against third party defendant. In response to defendant's motion for summary judgment, third party defendant moved for summary judgment against defendant. In support of its motion, third party defendant relied on its answer and the affidavit of its former president, John C. White, III. Third party defendant admitted in its answer that on 17 May 1989, it entered into a subcontract with defendant (hereinafter third party subcontract) to perform masonry work on the project. White stated in his affidavit that on 1 March 1990, he informed defendant that third party defendant had ceased its business operations and that White would make arrangements with plaintiff to perform the masonry work on the subcontract. White would be employed with plaintiff. White stated that on 1 March 1990 he and defendant mutually agreed to terminate the subcontract with neither party having to perform any further obligations nor receive any further benefits. Defendant and White further agreed that plaintiff would perform the masonry work and that defendant would enter into a new subcontract with plaintiff. All retainages and benefits of third party defendant were to be transferred to plaintiff.

Third party defendant contends that its subcontract with defendant was mutually terminated. We conclude that an issue of material fact exists as to whether there was a mutual rescission of the third party subcontract. Rescission may be made by mutual agreement. *Brannock v. Fletcher*, 271 N.C. 65, 75, 155 S.E.2d 532, 542 (1967). Rescission depends not only upon the acts of the parties, but it also depends upon the intent with which they are done.

> *For rescission there must be mutuality, express or implied.* The mutuality essential to rescission may be found to exist if, after breach of contract or abandonment by one party, the other by word or act declares the contract rescinded.

*Id.* at 74-75, 155 S.E.2d at 542 (quoting *Dooley v. Stillson*, 46 R.I. 332, 335, 128 Atl. 217, 218 (1928)). To constitute rescission by mutual consent, there must be an abandonment or repudiation of the contract by one of the parties that is assented to or acquiesced in by the other. *Id.* at 75, 155 S.E.2d at 542 (quoting 91 C.J.S. *Vendor & Purchaser*

§ 124 (1955)). Both elements must be present. Parol evidence is generally admissible to show grounds for granting a rescission even if the written agreement includes a merger clause. *Opsahl v. Pinehurst Inc.*, 81 N.C. App. 56, 66, 344 S.E.2d 68, 75 (1986). Third party defendant's affidavit creates an issue of fact as to whether there was a mutual rescission of the third party subcontract. Accordingly, we reverse the trial court's order granting summary judgment against third party defendant.

Affirmed in part, reversed in part and remanded.

Judges GREENE and WALKER concur.