HERRING v. HERRING

[231 N.C. App. 26 (2013)]

JUDITH TEEL HERRING, Plaintiff
v.
JAMES DALLAS HERRING, Defendant

No. COA13-544

Filed 3 December 2013

**Divorce—separation agreement—motion to set aside—mutual mistake—mistake of law**

The trial court did not err by denying defendant ex-husband's motions to set aside a separation agreement entered into by the parties and equitably distribute plaintiff's TSERS pension based on alleged mutual mistake. The mutual mistake, if any, was a "bare mistake of law" regarding the valuation of defined benefit plans for purposes of equitable distribution.

Appeal by defendant from order entered on 29 November 2012 by Judge Donna H. Johnson in Cabarrus County District Court. Heard in the Court of Appeals 23 October 2013.

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by James R. DeMay, for plaintiff-appellee.*

*Christy E. Wilhelm for defendant-appellant.*

DAVIS, Judge.

James Dallas Herring ("Defendant") appeals from the trial court's order denying his motion to set aside a separation agreement entered into by him and his former wife. The issue before us is whether the separation agreement should be rescinded based on the ground of mutual mistake. After careful review, we affirm the trial court's order.

## Factual Background

Judith Teel Herring ("Plaintiff") and Defendant were married on 27 April 1985 and separated on 21 June 1998. On 11 May 2007, the parties executed a separation agreement ("Separation Agreement") to "confirm their separation and make arrangements in connection therewith; including settlement of their property rights, and other rights and obligations growing out of the marriage relationship." The Separation Agreement distributed the parties' real and personal property, including the parties' marital home, vehicles, bank accounts, and retirement accounts.

Specifically, the Separation Agreement stated that Plaintiff would "retain all bank checking, savings, mutual fund, money market, stocks, 401K, 456B retirement and governmental employees retirement accounts which are presently titled in her name only as her separate property." The Separation Agreement also provided that Defendant would likewise "retain all bank checking, savings, mutual fund, money market, stocks and 401K retirement accounts which are presently titled in his name only as his separate property." The Separation Agreement contained a provision specifying that "[t]his agreement contains the entire undertaking of the parties, and there are no representations, warranties, covenants or undertakings other than those expressed and set forth herein." Finally, the Agreement provided that Defendant would pay Plaintiff a distributional award of $31,500 and that Plaintiff would execute a quitclaim deed conveying her interest in the marital home to Defendant.

On 21 February 2012, Plaintiff filed a complaint for absolute divorce and alleged that the parties had "agreed upon and completed a division of all property subject to equitable distribution considerations as defined by the North Carolina General Statutes, and there remains no division of property to be further considered by the Court." On 5 April 2012, Defendant filed an answer and counterclaim seeking equitable distribution and to set aside the Separation Agreement on grounds of mistake, misrepresentation, or fraud. Specifically, Defendant contended that "[t]he parties were mistaken as to the actual marital value of Plaintiff's Governmental Employees Retirement. The actual value was far greater than the $27,499 value divided by the parties."

The matter was heard on 10 October and 20 November 2012, and on 29 November 2012, the trial court entered an order denying Defendant's motion to set aside the Separation Agreement and likewise denying his claim for equitable distribution. Defendant appealed to this Court.

## Analysis

On appeal, Defendant argues that the trial court erred by failing to rescind or reform the parties' Separation Agreement based on a mutual mistake of fact.[1] We disagree.

"A marital separation agreement is subject to the same rules pertaining to enforcement as any other contract." *Gilmore v. Garner,*

---

1. Defendant makes no argument in his brief regarding the trial court's rejection of his fraud and misrepresentation theories. These issues are thereby deemed abandoned. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

157 N.C. App. 664, 669, 580 S.E.2d 15, 19 (2003). Thus, like any other contract, a separation agreement may be set aside or reformed based on grounds such as fraud, mutual mistake of fact, or unilateral mistake of fact procured by fraud. *See Searcy v. Searcy*, ___ N.C. App. ___, ___, 715 S.E.2d 853, 857 (2011) ("Separation and property settlement agreements are contracts and as such are subject to rescission on the grounds of (1) lack of mental capacity, (2) mistake, (3) fraud, (4) duress, or (5) undue influence.") (citation, quotation marks, and alteration omitted).

"A mutual mistake of fact is a mistake common to both parties and by reason of it each has done what neither intended." *Lancaster v. Lancaster*, 138 N.C. App. 459, 465, 530 S.E.2d 82, 86 (2000) (citation and quotation marks omitted). To support the rescission or reformation of an otherwise valid and binding contract, the mutual mistake

> must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, . . . the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.

*MacKay v. McIntosh*, 270 N.C. 69, 73, 153 S.E.2d 800, 804 (1967). Thus, neither unilateral mistakes of fact nor mutual mistakes of law are, standing alone, sufficient to set aside or reform a contract. *See Stevenson v. Stevenson*, 100 N.C. App. 750, 752, 398 S.E.2d 334, 336 (1990) ("A unilateral mistake, unaccompanied by fraud, imposition, or like circumstances, is not sufficient to avoid a contract."); *Durham v. Creech*, 32 N.C. App. 55, 60, 231 S.Ed.2d 163, 167 (1977) ("A bare mistake of law generally affords no grounds for reformation.").

The party seeking to reform or rescind the contract bears the burden of proving the existence of a mutual mistake by clear, cogent, and convincing evidence. *Smith v. First Choice Servs.*, 158 N.C. App. 244, 249, 580 S.E.2d 743, 748, *disc. review denied*, 357 N.C. 461, 586 S.E.2d 99 (2003). Here, Defendant contends that the parties shared a mutual misunderstanding as to the proper value of Plaintiff's Teachers' and State Employees' Retirement System ("TSERS") retirement benefits. Specifically, Defendant argues that the parties' mutual mistake was basing their calculation of the TSERS pension solely upon Plaintiff's contributions to the account rather than upon the expected future value of the pension if Plaintiff continued working for the State. We conclude that Defendant failed to adequately establish that the TSERS pension value used by the parties in calculating the distributional award to Plaintiff set

forth in the Separation Agreement constituted a mistake of fact common to both parties sufficient to compel the setting aside of the Agreement.

Defendant argues that Plaintiff's testimony at the hearing on his motion to set aside the Separation Agreement was "an acknowledgement of the mutual mistake" because she testified that "[a]s far as I knew, 27,000 was what was in there at that point 'cause that's all I would have gotten. That's how we looked at it at the time we did this." However, this statement does not establish that Plaintiff misunderstood the nature of her pension or was unaware of the potential future benefits she would receive if she continued her service with the State for the prescribed period of time. Indeed, Plaintiff's earlier testimony that if she "had retired on that date, that would have been the amount of money that [she] would have gotten" indicates that her intent had been to value the pension as if she had terminated her service and withdrawn the pension funds on the date of separation.

We are not persuaded that these statements demonstrate by clear, cogent, and convincing evidence that Plaintiff was wholly ignorant of the fact that, as a defined benefit plan,[2] her TSERS pension would eventually be worth more than just her contributions and the accumulated interest. Defendant's unilateral assertions that (1) the parties intended to use the actual value of the TSERS account in calculating a distributional award; and (2) they were unaware that the pension was worth more than Plaintiff's contributions are insufficient to establish the existence of a mutual mistake of material fact. *See Lancaster*, 138 N.C. App. at 465-66, 530 S.E.2d at 86 ("Although [the defendant] argues that the separation agreement contains 'mutual mistakes,' [the plaintiff] offers no such argument, thereby negating the contention that the alleged mistakes were 'mutual.' ").

Moreover, we believe that the mistake alleged by Defendant would more accurately be characterized as a mistake of law, which does not afford a basis for rescinding or reforming a separation agreement. Defendant is essentially asserting that the parties misunderstood the value of the TSERS pension because they did not treat the pension as

---

2. "In a defined benefit plan the employee's pension is determined without reference to contributions [by the employee] and is based on factors such as years of service and compensation received." *Cochran v. Cochran*, 198 N.C. App. 224, 227, 679 S.E.2d 469, 472 (2009) (citation and quotation marks omitted), *disc. review denied*, 363 N.C. 801, 690 S.E.2d 533 (2010). In equitable distribution actions, defined benefit plans are valued by our courts using the five-step method outlined in *Bishop v. Bishop*, 113 N.C. App. 725, 731, 440 S.E.2d 591, 595-96 (1994).

a defined benefit plan and calculate its worth accordingly. Thus, if the parties were mutually mistaken about anything, the mistake would have concerned how the TSERS pension would have been valued and distributed under North Carolina's equitable distribution law.

In *Dalton v. Dalton*, 164 N.C. App. 584, 586, 596 S.E.2d 331, 333 (2004), the defendant argued that the trial court should have set aside the parties' separation agreement on several grounds, including the parties' mutual mistake as to how retirement accounts were distributed under North Carolina's equitable distribution system. The defendant asserted that the parties' belief that "the law in North Carolina required each of them to retain their respective retirement savings account as their separate property" was a mutual mistake requiring rescission. *Id.* at 586, 596 S.E.2d at 332. Our Court concluded that the alleged mistake did not support rescission of the contract, stating that

> in the instant case, the separation agreement succeeded in accomplishing the intention of the parties. Specifically, the parties intended to distribute their retirement benefits pursuant to an erroneous understanding of North Carolina law. That the parties' distribution scheme, in actuality, differed from that established by North Carolina law constitutes merely a "bare mistake of law."

*Id.* at 588, 596 S.E.2d at 334. Likewise, we believe that the mutual mistake here, if any, is a "bare mistake of law" regarding the valuation of defined benefit plans for purposes of equitable distribution. As such, it fails as a basis for rescission.

Finally, in a related argument, Defendant asserts that the trial court's refusal to value the TSERS account using the defined benefit plan valuation method outlined in *Bishop v. Bishop*, 113 N.C. App. 725, 731, 440 S.E.2d 591, 595-96 (1994), led to its erroneous conclusion that there was no mutual mistake of fact. This argument is without merit.

While Defendant is correct that a trial court is required to utilize the *Bishop* method when distributing a defined benefit plan in an equitable distribution action, it is well established that parties "may agree in a separation agreement to distribute their property in any fashion they desire without resorting to litigation for equitable distribution." *Lee v. Lee*, 93 N.C. App. 584, 586, 378 S.E.2d 554, 555 (1989). Indeed, "[b]y executing a written separation agreement, married parties forego their statutory rights to equitable distribution and decide between themselves how to divide their marital estate following divorce." *Brenenstuhl v. Brenenstuhl*, 169 N.C. App. 433, 435, 610 S.E.2d 301, 303 (2005).

Here, the Separation Agreement addresses and distributes the TSERS account in the provision stating "[t]he Wife shall hereinafter retain . . . governmental employees retirement accounts which are presently titled in her name only as her separate property." As Defendant has failed to meet his burden of proving a mutual mistake requiring reformation or rescission of the Separation Agreement, the trial court was neither obligated nor permitted to disregard the parties' contractual agreement and instead conduct its own valuation and distribution of the TSERS pension using the *Bishop* method. *See Lee*, 93 N.C. App. at 586, 378 S.E.2d at 555 ("A validly drawn separation agreement which distributes all of the parties' property . . . bars an equitable distribution claim.").

## Conclusion

For the reasons stated above, we affirm the trial court's order denying Defendant's motion to (1) set aside the Separation Agreement; and (2) equitably distribute Plaintiff's TSERS pension.

AFFIRMED.

Judges ELMORE and McCULLOUGH concur.