IN THE SUPREME COURT OF NORTH CAROLINA

No. 359A13

Filed 19 December 2014

GEORGE CHRISTIE and DEBORAH CHRISTIE

v.

HARTLEY CONSTRUCTION, INC.; GRAILCOAT WORLDWIDE, LLC; and GRAILCO, INC.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 745 S.E.2d 60 (2013), affirming an order of summary judgment entered on 13 August 2012 by Judge Gary E. Trawick in Superior Court, Orange County. On 18 December 2013, the Supreme Court allowed plaintiffs' petition for discretionary review of additional issues. Heard in the Supreme Court on 14 April 2014.

*Whitfield Bryson & Mason, LLP, by Daniel K. Bryson and Scott C. Harris, for plaintiff-appellants.*

*Ragsdale Liggett PLLC, by William W. Pollock and Angela M. Allen, for defendant-appellee Hartley Construction, Inc.*

*Conner Gwyn Schenck PLLC, by Andrew L. Chapin, for defendant-appellees GrailCoat Worldwide, LLC and GrailCo, Inc.*

*Jonathan McGirt, and Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn, for North Carolina Advocates for Justice, amicus curiae.*

EDMUNDS, Justice.

Defendants GrailCoat Worldwide, LLC and GrailCo, Inc. (collectively, "GrailCoat") provided an express twenty-year warranty for its product SuperFlex,[1] a stucco-like material that plaintiffs purchased to cover the exterior of their new home. When the product later failed and plaintiffs brought suit for damages, GrailCoat claimed that North Carolina's six-year statute of repose barred plaintiffs' attempt to enforce the warranty. We conclude that by contracting for a warranty term that exceeded the repose period, GrailCoat waived the protections provided by that statute and is bound by its agreement. Accordingly, we hold GrailCoat to its promise to plaintiffs and reverse in part the decision of the Court of Appeals affirming the trial court's grant of summary judgment in favor of the GrailCoat defendants.

George and Deborah Christie ("plaintiffs") presented evidence tending to show the following: In 2004, plaintiffs decided to build a custom home in Orange County. Because they lacked experience in both architectural design and residential construction, plaintiffs entered into an agreement with Hartley Construction, Inc., a company that specialized in designing and building such houses. Under the agreement, Hartley would manage all aspects of the project to provide plaintiffs a "turnkey" home ready for occupancy. Hartley constructed the home using structural insulated panels ("SIPs") as the exterior walls of the

---

[1] In the record, the product is called both "SuperFlex" and "GrailCoat." We will use the term SuperFlex to avoid confusing the product with the manufacturer.

residence. The SIPs would not only constitute the house's load-bearing structural support, but would also provide insulation and sheathing. SIP construction requires an exterior cladding system to protect the home from the elements and moisture intrusion. During the design process, Hartley suggested that plaintiffs consider SuperFlex, an exterior cladding system marketed by GrailCoat as being "extremely well-suited [for] use over Structural Insulated Panels." Plaintiffs conducted research by accessing GrailCoat's website, which promised that "[p]roperly installed over SIPs, GrailCoat is fully warranted for twenty years to not crack, craze, fatigue or delaminate from the substrate. If maintained properly, GrailCoat could last forty or fifty years, even in salt air, freeze/thaw, or heavy rain or sun exposure." Satisfied with GrailCoat's representations and relying on the warranty provisions stated on its website, plaintiffs elected to use SuperFlex. Hartley purchased the SuperFlex and hired a GrailCoat-certified installer who applied the product to the home in the latter half of 2004. Orange County issued a Certificate of Occupancy for the residence on 22 March 2005.

Several years later, plaintiffs began to notice cracks and blistering in the SuperFlex and moisture intrusion into their home. Further investigation revealed that the moisture had caused substantial rot and delamination of the SIPs, significantly compromising the structural integrity of the home. After several unsatisfactory meetings with Hartley representatives in late March of 2011, plaintiffs notified GrailCoat of the problems and their intent to make a warranty

claim. On 18 April 2011, GrailCoat responded, stating that the problems were a result of improper application and installation rather than any defect in the product. Although GrailCoat offered replacement SuperFlex, it refused to compensate plaintiffs for labor costs for installation of the replacement product or for any damage caused by the moisture intrusion.

On 31 October 2011, plaintiffs filed a complaint in Superior Court, Orange County, alleging breach of contract, breach of implied warranty, negligence and negligence per se, gross or willful and wanton negligence, and unfair and deceptive practices against Hartley Construction, Inc.; and alleging breach of express warranties, breach of implied warranties of merchantability and fitness, negligence, and unfair and deceptive practices against GrailCoat Worldwide and GrailCo, Inc. Hartley filed its answer on 3 January 2012, asserting numerous defenses and asking the court to dismiss the complaint. GrailCoat filed its answer on 6 January 2012, pleading affirmative defenses while also moving to dismiss and for judgment on the pleadings. After the trial court denied all the motions included in both answers, each defendant moved for summary judgment. Hartley's motion stated that, because the Christies had failed to forecast sufficient evidence of fraudulent or willful or wanton conduct, Hartley was entitled to summary judgment under N.C.G.S. § 1-50(a)(5), North Carolina's six-year statute of repose for claims arising out of improvements to real property. GrailCoat argued that it was entitled to summary judgment "as a matter of law, as shown by the pleadings and applicable

law." Plaintiffs also moved for summary judgment against GrailCoat on their claim for breach of express warranty. After conducting a hearing, the trial court entered an order on 13 August 2012 granting defendants' motions for summary judgment as to all claims against them, denying plaintiffs' motion for summary judgment on their express warranty claim, and dismissing plaintiffs' complaint with prejudice.

The Court of Appeals affirmed the trial court in a divided opinion. The majority opinion stated that N.C.G.S. § 1-50(a)(5) applies to plaintiffs' claims and noted that whether a statute of repose has run is a question of law. *Christie v. Hartley Constr., Inc.*, ___ N.C. App. ___, ___, 745 S.E.2d 60, 62 (2013). The majority found that, based on Orange County's 22 March 2005 issuance of the Certificate of Occupancy for the structure, the statute of repose had run on 22 March 2011, several months before plaintiffs filed their complaint. *Id.* at ___, 745 S.E.2d at 63. As to the effect of defendant's express warranty on the statute of repose, the majority cited *Roemer v. Preferred Roofing, Inc.,* 190 N.C. App. 813, 660 S.E.2d 920 (2008), where the Court of Appeals held that N.C.G.S. § 1-50(a)(5) precluded a claim for damages under an express lifetime warranty. *Id.* at ___, 745 S.E.2d at 63. The majority compared the lifetime warranty in *Roemer* to the twenty-year warranty at issue here and concluded that the statute of repose barred plaintiffs' claims for damages in this case. The majority added that, under *Roemer*, any remedy for breach of the warranty once the statute of repose had run lay in specific

performance, not damages. *Id.* at ___, 745 S.E.2d at 63. Accordingly, the Court of Appeals majority affirmed the trial court. *Id.* at ___, 745 S.E.2d at 63.

Although the dissenting judge agreed with the majority as to the resolution of all of plaintiffs' claims against Hartley and most of plaintiffs' claims against GrailCoat, he dissented from the dismissal of plaintiffs' claim for breach of express warranties. *Id.* at ___, 745 S.E.2d at 63 (Hunter, Jr., Robert N., J., dissenting). The dissenting judge noted that *Roemer* did not describe the terms of the warranty at issue in that case or "provide reasoning for why specific performance would be the sole remedy under those terms," leading him to presume that the warranty in *Roemer* limited the remedy to that particular relief. *Id.* at ___, 745 S.E.2d at 64. In other words, he believed that the result in *Roemer* was more likely driven by the terms of the warranty than by the statute of repose.

The dissenting judge went on to argue that, because the warranty here is a "full warranty," *Roemer* should be limited to its facts and deemed inapplicable to this case. *Id.* at ___, 745 S.E.2d at 64. Observing that the majority's holding unnecessarily impairs the freedom to contract, he would have held that "a full warranty which exceeds the time period for the statute of repose is a waiver of the statute for all claims." *Id.* at ___, 745 S.E.2d at 64. Plaintiffs filed a notice of appeal based on the dissent. We also allowed plaintiffs' petition for discretionary review of additional issues.

We begin our analysis by reviewing the characteristics of statutes of limitations and statutes of repose. Although both are public policy tools by which the General Assembly has set an expiration date for certain types of civil claims, these statutes exhibit significant differences in both form and function that have not always proved clear in practice. *See Bolick v. Am. Barmag Corp.*, 306 N.C. 364, 366, 293 S.E.2d 415, 417-18 (1982) ("Although the term 'statute of repose' has traditionally been used to encompass statutes of limitation, in recent years it has been used to distinguish ordinary statutes of limitation from those that begin 'to run at a time unrelated to the traditional accrual of the cause of action.' " (footnote omitted)); *see also CTS Corp. v. Waldburger*, 573 U.S. ___, ___, 134 S. Ct. 2175, 2186, 189 L. Ed. 2d 62, 76 (2014) ("[I]t is apparent that general usage of the legal terms [statutes of repose and statutes of limitation] has not always been precise . . . ."); Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U. L. Rev. 579, 582-87 (1981) [hereinafter *Statutes of Repose*] (noting five distinct uses of the term "statute of repose" employed at the time of the article's publication).

Statutes of limitation are intended "to require diligent prosecution of known claims," *Black's Law Dictionary* 1636 (10th ed. 2014), and to prevent the problems inherent in litigating claims in which "evidence has been lost, memories have faded, and witnesses have disappeared," *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 349, 64 S. Ct. 582, 586, 88 L. Ed. 788, 792 (1944). Such statutes

achieve this goal by beginning the limitations period when the plaintiff's cause of action accrues, typically when the plaintiff is injured or discovers he or she has been injured. *See, e.g.*, *CTS Corp.*, 573 U.S. at ___, 134 S. Ct. at 2182, 189 L. Ed. 2d at 72; *Trs. of Rowan Technical Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276 n.3 (1985). Although statutes of limitation function as affirmative defenses, *see Solon Lodge No. 9 v. Ionic Lodge No. 72*, 247 N.C. 310, 316, 101 S.E.2d 8, 13 (1957), their enforceability is subject to equitable defenses, *see, e.g.*, *Nowell v. Great Atl. & Pac. Tea Co.*, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959) ("[E]quity will deny the right to assert [a statute of limitations] defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith."). As a result, statutes of limitation are procedural, not substantive, and determine not whether an injury has occurred, but whether a party can obtain a remedy for that injury. *See Bolick*, 306 N.C. at 366-67, 293 S.E.2d at 418.

In contrast, statutes of repose are intended to mitigate the risk of inherently uncertain and potentially limitless legal exposure. *See, e.g.*, *CTS Corp.*, 573 U.S. at ___, 134 S. Ct. at 2183, 189 L. Ed. 2d at 73; *Raithaus v. Saab—Scandia of Am., Inc.*, 784 P.2d 1158, 1161 (Utah 1989); *Statutes of Repose* at 587. Accordingly, such a statute's limitation period is initiated by the defendant's "last act or omission" that at some later point gives rise to the plaintiff's cause of action. *See, e.g.*, N.C.G.S. § 1-50(a)(5)(a) (2013); *Trs. of Rowan Technical*, 313 N.C. at 234 n.3, 328 S.E.2d at 276

n.3. The time of the occurrence or discovery of the plaintiff's injury is not a factor in the operation of a statute of repose.

Because an applicable repose period begins to run automatically, statutes of repose give potential defendants a degree of certainty and control over their legal exposure that is not possible when such exposure hinges upon the possibility of an injury to a plaintiff that may never manifest. Statutes of repose function as "unyielding and absolute barrier[s]" to litigation, *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985) (citations omitted), are substantive in nature, *see Boudreau v. Baughman*, 322 N.C. 331, 341, 368 S.E.2d 849, 857 (1988) ("If the action is not brought within the specified period, the plaintiff 'literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress.' " (citation omitted)), and are not subject to equitable doctrines, *see, e.g.*, *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 240, 515 S.E.2d 445, 449 (1999) ("While equitable doctrines may toll statutes of limitation, they do not toll substantive rights created by statutes of repose." (citations omitted)). The plaintiff has the burden of proving that a statute of repose does not defeat the claim. *See Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (1994) (citing *Bolick*, 306 N.C. 364, 293 S.E.2d 415).

Subdivison 1-50(a)(5), triggered by a defendant's "last act or omission," is a statute of repose that provides that any claim relating to any "improvement to real

property" must be brought within six years. N.C.G.S. § 1-50(a)(5)(a). We have held that this statute "applies exclusively to all claims based upon or arising out of the defective or unsafe condition of an improvement to real property." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 446, 444 S.E.2d 423, 428 (1994). Accordingly, we consider the effect of the statute of repose and of defendant's twenty-year warranty upon plaintiffs' claims for damages to real property.

North Carolina has long recognized that parties generally are "free to contract as they deem appropriate." *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 244, 539 S.E.2d 274, 277 (2000). This rule also extends to warranties because "[a] warranty, express or implied, is contractual in nature." *Wyatt v. N.C. Equip. Co.*, 253 N.C. 355, 358, 117 S.E.2d 21, 24 (1960). Therefore, we are faced with a conflict between the public policy embodied in the repose period set out in N.C.G.S. § 1-50(a)(5) and the right of parties to contract freely. When encountering such conflicts in the past, this Court has held to "the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit, subject, however, to the qualification that contractual provisions violative of the law or contrary to some rule of public policy are void and unenforceable." *Hall v. Sinclair Ref. Co.*, 242 N.C. 707, 709-10, 89 S.E.2d 396, 397-98 (1955).

The public policy underlying N.C.G.S. § 1-50(a)(5) appears straightforward. As noted above, statutes of repose provide a bulwark against the possibility of open-ended exposure to suits for damages. Here, where GrailCoat is a business concern furnishing purported improvements to real property, the statute terminates the risk of suit six years after this defendant's last act "giving rise to the cause of action or substantial completion of the improvement." N.C.G.S. § 1-50(a)(5). A company might well rely on such a limitation when making business decisions such as product pricing and insurance coverage. However, we see no public policy reason why the beneficiary of a statute of repose cannot bargain away, or even waive, that benefit. A warranty is a seller's indication of its confidence in, and its willingness to stand behind, its product. A business marketing its products may reasonably conclude that offering a warranty giving customers protection exceeding the limitations period will provide an edge over its competitors. A supplier of improvements to real property who is willing in good faith to provide a warranty that extends beyond six years should not be forced to offer a more limited warranty. The continuing popularity of extended warranties that allow a customer to purchase additional protection indicates both that buyers are mindful of the duration of warranty coverage and that sellers are aware that extended warranties provide value. Therefore, we conclude that the six-year repose period set out in the statute provides valuable protection to those who make improvements to real property, but

that the beneficiaries of the statute of repose may choose to forego that protection without violating any rule of public policy.

Here, GrailCoat advertised its product to plaintiffs as being "fully warranted" for twenty year but now claims that this warranty covered only the first six years after its product was applied and that the remaining fourteen of those twenty years were a nullity. A warranty that a seller knows is unenforceable is a sham, useful only to beguile the unsuspecting. Plaintiffs' evidence indicated that they carefully researched SuperFlex and other possible exterior cladding systems for their home and were influenced by GrailCoat's twenty-year warranty when making their final decision. As a result, we conclude that GrailCoat knowingly and freely entered into a contract of sale with plaintiffs in which GrailCoat bargained away the protections of the statute of repose. The contract at issue provided for a warranty of twenty years. That warranty stands in its entirety. Accordingly, we reverse the holding of the Court of Appeals affirming the trial court's dismissal of plaintiffs' claim for breach of express warranty against GrailCoat.

We conclude that discretionary review was improvidently allowed as to the remaining two issues.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justice HUNTER did not participate in the consideration or decision of this case.