COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia


JAMES J. HORZEMPA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1754-18-4                      JUDGE WILLIAM G. PETTY
                                                    JULY 23, 2019
BARBARA C. HORZEMPA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A. B. Willis, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on briefs), for appellant.

Charles E. Powers (Stiles Ewing Powers PC, on brief), for appellee.


Appellant argues the trial court erred in modifying the language in a provision of the

parties' 2003 separation agreement when it incorporated the agreement into the 2018 final decree

of divorce.  For the following reasons, we affirm.

I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

When James J. Horzempa (husband) married Barbara C. Horzempa (wife) in 1990, he

had already been serving in the military for approximately twelve years.  Husband and wife

separated in 2003 while living in North Carolina, and they executed a separation and property

settlement agreement (PSA) that established, among other things, spousal support and

maintenance.  Provision 13 of the PSA provided,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> Wife is presently entitled to medical, dental and hospital benefits provided by the military but will lose such benefits upon divorce. Husband hereby covenants, contracts and agrees to procure and maintain Tricare Prime medical and dental insurance coverage for wife and to pay the premiums thereon until such time as wife remarries or dies, whichever shall first occur.[1]

Husband retired from the military in 2005. The parties remained separated until husband filed a complaint for divorce in Virginia in 2018. At that time wife was married to husband for only fifteen years of the time husband performed military service; she consequently did not qualify as an eligible dependent under 10 U.S.C. § 1072(2)(F) and therefore could not receive continued Tricare coverage after divorce.

During the divorce proceeding, the only contested issue was whether Provision 13 should be included in the divorce decree as part of the incorporated PSA. Both parties agreed that North Carolina law governed interpretation of the PSA.[2] Counsel for both parties proffered to the trial court that husband and wife were mutually mistaken at the time the PSA was signed regarding husband's ability to provide post-divorce Tricare coverage.[3] Husband argued that because the mutual mistake was one of law, Provision 13 could not be reformed under North Carolina law and should be stricken from the agreement. Wife argued, however, that the intent of the parties to provide wife with post-divorce medical coverage was clear and that the mutual mistake was

---

[1] Tricare is a federal government managed health insurance program available to members of the military. Tricare insurance is also available to dependents of military service members. However, an "unremarried former spouse" of a member only qualifies as a "dependent" if, on the date of the final decree of divorce, the parties had been married for at least twenty years, during which time the uniformed service member performed at least twenty years of service. 10 U.S.C. § 1072(2)(F).

[2] Provision 30 of the PSA provides, "This Agreement has been drafted in accordance with the laws of the State of North Carolina and accordingly, any interpretation or enforcement of this Agreement shall be governed by the laws of this State notwithstanding that the proceeding to interpret or enforce this Agreement may be brought in another state."

[3] Both parties had different counsel before the trial court than they had before this Court on appeal.

one of fact, which could be reformed under North Carolina law. Wife asked the trial court to modify the language of the PSA to reflect the intent of the parties.

The trial court found "the language of the PSA clearly shows that the parties intended for the wife to have health and dental insurance coverage following divorce." The trial court concluded that the parties made a mutual mistake of fact as to what coverage would be available following divorce. In the divorce decree, the trial court modified Provision 13 by providing that husband would "procure and maintain Tricare Prime medical and dental insurance coverage, *or comparable coverage*, for wife and to pay the premiums thereon until such time as wife remarries or dies, whichever shall first occur." The trial court denied husband's motion to reconsider, and this appeal followed.

## II. ANALYSIS

Husband's four assignments of error concern a singular argument: the trial court erred in reforming Provision 13 on the basis of mutual mistake of fact rather than striking the provision altogether.

The authority of a Virginia court granting spousal support and maintenance in conjunction with a divorce is provided by Code § 20-109. If a "contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract." Code § 20-109(C).

As with any other contract, Virginia appellate courts review a trial court's interpretation of a PSA *de novo*. Plunkett v. Plunkett, 271 Va. 162, 166 (2006). Moreover, "on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself." Eure v. Norfolk Shipbuilding & Drydock Corp., Inc., 263 Va. 624, 631 (2002).

The parties here agree, as do we, that the interpretation and possible revision of the PSA is governed by North Carolina law. Under North Carolina law, "[a] marital separation agreement is subject to the same rules pertaining to enforcement as any other contract." Gilmore v. Garner, 580 S.E.2d 15, 19 (N.C. Ct. App. 2003). "It is well-settled that the intention of the parties to a contract controls the interpretation of the contract." Litvak v. Smith, 636 S.E.2d 327, 330 (N.C. Ct. App. 2006).

> An instrument which fails to express the true intention of the parties may be reformed to express such intention when the failure is due to the mutual mistake of the parties, to the mistake of one party induced by fraud of the other, or to mistake of the draftsman. Such a mutual mistake of the parties may be one relating to the legal effect of the instrument. Where, by reason of an error of expression or mistake as to the force and effect of the language used, an instrument fails to express the intent of the parties, equity will afford relief.

McBride v. Johnson Oil & Tractor Co., 279 S.E.2d 117, 119 (N.C. Ct. App. 1981) (citation omitted); see Durham v. Creech, 231 S.E.2d 163, 166 (N.C. Ct. App. 1977) ("When, due to the mutual mistake of the parties, or perhaps a mistake by their draftsman, the agreement expressed in a written instrument differs from the agreement actually made by the parties, the equitable remedy of reformation is available.").

Moreover, parties may intend to include a provision in a document, but

> [b]y reason of the use of language mistakenly believed to be, but which was not, sufficient to accomplish the common purpose, such provision does not appear in the [document]. They intended the [document] to include what it does not include. This constitutes a mistake of fact justifying reformation.

McBride, 279 S.E.2d at 120 (quoting State Tr. Co. v. Braznell, 41 S.E.2d 744, 747 (N.C. 1947)); Durham, 231 S.E.2d at 167 (concluding that the ineffectual language of the instrument might "be a mistake of law as to the legal efficacy of the transaction. However, the failure to accomplish the intention of the parties, . . . was a mistake of fact which will afford reformation.").

- 4 -

Here, the intention of the parties in drafting Provision 13 of the PSA controls the interpretation of that provision.  See Litvak, 636 S.E.2d at 330.  The express language of the provision shows the parties' intent to ensure that wife had medical and dental coverage from the time the separation agreement was signed until she either died or remarried.  The provision clearly contemplated a time when the military would no longer provide medical coverage and husband would be required to procure, maintain, and pay for the coverage.  We conclude that the intent of the parties was to provide wife with medical *coverage* rather than to specifically provide "Tricare" benefits.

At the time the PSA was signed in 2003, husband was still in the military.  The military thus provided wife with medical coverage at the time the PSA was signed.  The military continued to provide medical coverage for wife after husband retired from the military in 2005 until the parties' divorce in 2018.

The intent of the parties was that husband would "procure and maintain" post-divorce medical and dental coverage for wife.  The parties agree that husband cannot provide "Tricare Prime" medical and dental insurance for wife after divorce.  To the extent that the provision as written limits the coverage provider to Tricare Prime, as husband argues, inclusion of the term "Tricare Prime" was an "error of expression" that resulted in the provision "fail[ing] to express the intent of the parties."  See McBride, 279 S.E.2d at 119.  Consequently, "the agreement expressed in [the] written instrument differs from the agreement actually made by the parties [and] the equitable remedy of reformation is available."  Durham, 231 S.E.2d at 166.  The trial court's addition of the phrase "or comparable coverage" in Provision 13 reforms the written instrument to reflect the agreement actually intended by the parties.

Nevertheless, husband argues that "the parties mutually misunderstood the federal law applicable to the availability of the military medical or dental benefits" and that this constituted a

mistake of law which cannot be reformed. Both parties represented to the trial court that they did not know that husband would not be able to provide Tricare Prime insurance for wife post-divorce. Under North Carolina law,

> [a] bare, naked mistake of law affords no grounds for reformation. This, however, is the general rule, qualified by many exceptions. Where the error of law induces a mistake of fact, that is, where, by reason of an error of expression . . . the contract fails to express the intent of the parties, equity will afford relief.

McBride, 279 S.E.2d at 119 (quoting Braznell, 41 S.E.2d at 746). This is such a case. To the extent the parties made an error of law in being unfamiliar with the federal parameters of Tricare, the error of law induced a mistake of fact because they included a term, "Tricare Prime," in the PSA that caused it to express something neither party intended. The fact that the parties did not sufficiently understand the limitations of the federal statute prior to drafting Provision 13 does not eliminate reformation as a remedy to uphold the parties' intent.

> Simply put, a party seeking reformation of a written instrument need not allege or prove that the mutual mistake was a reasonable or neglect-free mistake. Even if the mistake resulted from that party's failure to exercise reasonable diligence, reformation is available if there is clear, cogent, and convincing evidence that the mistake was a mutual one and that it prevents the instrument from embodying the parties' actual, original agreement.

Wells Fargo Bank, N.A. v. Coleman, 768 S.E.2d 604, 611 (N.C. Ct. App. 2015).[4]

---

[4] Husband argues that two North Carolina cases support his argument that the error here was a mistake of law that cannot be reformed. We find the cases to be inapplicable to the facts before us. In Herring v. Herring, 752 S.E.2d 190, 193 (N.C. Ct. App. 2013), the appeals court found the husband had failed to prove a mutual mistake of fact, as alleged. The court further concluded "the alleged mistake did not support rescission of the contract [because] 'in the instant case, the separation agreement succeeded in accomplishing the intention of the parties.'" Id. (quoting Dalton v. Dalton, 596 S.E.2d 331, 333 (N.C. Ct. App. 2004)). In contrast, here the error prevented Provision 13 from accomplishing the intention of the parties, and the trial court's reformation brought the written document into line with the parties' intent that husband procure and maintain medical coverage for wife.

In Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners, 697 S.E.2d 468, 472 (N.C. Ct. App. 2010) (quoting Metro. Prop. & Cas. Ins. Co. v.

- 6 -

We conclude the trial court did not err in its application of North Carolina law to reform the language of Provision 13 to reflect the intent of the parties.[5]

Finally, we conclude that the trial court's reformation of Provision 13 complies with Code § 20-109. That code section states that no order "shall be entered except in accordance with [the parties'] stipulation or contract." Code § 20-109(C). Here, the final decree's modification of the language of Provision 13 was in accordance with the contract as reformed under North Carolina law. We therefore find the trial court did not err in modifying the language of Provision 13 when it incorporated it into the divorce decree. Likewise, it did not err in denying husband's motion to reconsider its decision. Accordingly, we affirm.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

---

Dillard, 487 S.E.2d 157, 159 (N.C. Ct. App. 1997)), the court of appeals recognized that "[r]eformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake . . . , the written instrument fails to embody the parties' actual, original agreement." It, however, "refuse[d] to permit a trial court to use reformation to essentially create a new agreement between the parties and impose upon [one party] a liability which she had not assumed, or an obligation which she had not undertaken." Id. at 473.

[5] We recognize that once the trial court found the parties' intent to provide wife with post-divorce coverage, it simply could have interpreted, consistent with that intent, the term "Tricare Prime" as the *type* of insurance required rather than the specific provider. However, both parties presented this to the trial court as a reformation issue, the trial court ruled that it was reforming the PSA, and the parties framed it as such on appeal. Accordingly, we address this as a reformation issue rather than an issue of interpretation.