IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-674

Filed: 4 August 2020

Dare County, No. 16-CVS-644

DIANA TSONEV for the ESTATE of ROBERT SHEARER and MINERVA SHEARER by DIANA TSONEV, Plaintiffs,

v.

MCAIR, INC. d/b/a OUTER BANKS HEATING & COOLING and MCAIR, INC. d/b/a DR. ENERGY SAVER, Defendant.

Appeal by plaintiffs from orders entered 20 March 2019 by Judge Alma Hinton in Dare County Superior Court. Heard in the Court of Appeals 7 January 2020.

*The Wills Law Group, by Gregory E. Wills, for plaintiff-appellants.*

*McAngus Goudelock & Courie, PLLC, by Walt Rapp and Sean R. Madden, for defendant-appellees.*

BRYANT, Judge.

Parties are generally free to contract as they see fit. Where, as here, the contract contains an express provision that no action may be brought more than two years after the completion of the work contracted, we affirm the trial court's directed verdict dismissing an action commenced more than five years after completion of the work.

PROCEDURAL HISTORY/ FACTS

Mr. and Mrs. Robert Shearer, represented by Diana Tsonev,[1] ("plaintiffs") filed a complaint against defendant McAir, Inc. d/b/a Outer Banks Heating and Cooling ("defendant McAir OBHC") and McAir, Inc, d/b/a Dr. Energy Saver ("defendant McAir DES") (collectively "defendants") on 29 November 2016 in Dare County Superior Court. Plaintiffs alleged that defendants did not properly remediate flood damage to their home and negligently caused damage in excess of $25,000. Plaintiffs sought recovery for negligence, negligent misrepresentation, breach of contract, breach of implied warranty, and breach of express warranty. On 28 January 2019, a jury trial commenced before the Honorable Alma Hinton, Judge presiding.

The evidence of record shows that plaintiffs owned a house in Kill Devil Hills, North Carolina. On 27 August 2011, the home was damaged by flood waters as a result of Hurricane Irene. Plaintiffs hired defendant McAir OBHC to repair the HVAC system, which included replacing the duct system under the house. Defendant McAir informed plaintiffs that their affiliated company, defendant McAir DES, could remediate other damage to the subfloor and crawlspace under the house. Defendant McAir DES submitted a proposal to plaintiffs detailing the scope of the work to be performed, which included six items. Defendant McAir DES would (1) remove all insulation under the home, (2) foam seal the chimney base and all penetrations of electrical or plumbing works, (3) treat all biochemical areas of the crawlspace, (4)

---

[1] Upon the death of Robert Shearer his daughter, Diana Tsonev, was allowed to be substituted as plaintiff for Robert and allowed to represent Minerva Shearer as her attorney in fact.

install new R-19 bat insulation, (5) clean all wood in the crawlspace, and (6) clean up and remove all debris. The proposal stated that a chemical treatment and seal ("Aftershock") would be applied in order to stop existing mold growth. A number of terms and conditions provided that the contract would supply only the work specified and that all services performed and materials supplied would be free from defects for two years following installation. "[Defendant McAir DES] [is] not liable for any consequential, incidental, indirect, punitive, treble, speculative, or special damages of any kind whatsoever, and [purchasers] may not bring any action against [defendant McAir DES] more than two (2) years after the Completion Date." Finally, the proposal contained a merger clause which stated the following:

> This Agreement (and all attachments) contain the entire, final agreement between you and us, and supersedes all prior written and oral agreements, proposals, and understandings. You (i) have had the opportunity to review it with an attorney of your choice, (ii) have read and understood each part, (iii) are satisfied with all of its provisions, and (iv) affirm that neither we, nor any of our representatives, have made, nor have you relied on any other representatives or promises, oral or otherwise, that are outside this Agreement. All waivers must be in writing to be effective.

Plaintiffs signed and accepted the proposal on 2 September 2011. The crawlspace remediation was completed at the end of September 2011.

Almost five years later, in July 2016, plaintiffs noticed that the floor of the residence was sagging. Thereafter, plaintiffs discovered that in the crawlspace, the

wood which had been painted with Aftershock had rotted. A building inspector later examined the crawlspace. Floor joists and girders had failed and collapsed, and the rest were in the process of failing. The inspector condemned the house as being unsafe for human occupants.

Following the close of plaintiff's case-in-chief, the court rendered a directed verdict in favor of defendants. Plaintiffs filed a motion for a new trial. On 20 March 2019, the court entered its written order granting defendants' motion for directed verdict.

> [T]he [c]ourt . . . finds that there is a contract in this case that calls for any action to be taken within two years. That action was not taken. The contract was signed by [p]laintiff and it appears to be a valid contract acknowledged by [defendant McAir DES], or a representative thereof, that requires action to be taken within two years.

On 20 March 2019, the court also entered its order denying plaintiffs' motion for a new trial. Plaintiffs appeal both orders.

---

On appeal, plaintiffs contend the trial court erred by (I) failing to apply the "discovery rule," (II) excluding evidence in support of the claim for negligent misrepresentation, (III & IV) excluding expert witness testimony, and (V) entering a directed verdict and failing to grant plaintiffs' motion for a new trial.

*Standard of Review*

When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. Any conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied.

. . . [B]ecause the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed de novo.

*Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 31, 795 S.E.2d 253, 257 (2016) (citations omitted).

*I*

Plaintiffs argue that the trial court erred by granting the motion for a directed verdict and not applying the "discovery rule," pursuant to N.C. Gen. Stat. §§ 1-52(16) and 1-50(5) (describing periods of repose and limitation for the commencement of actions arising from improvements to real property). Plaintiffs contend that the directed verdict granted on the basis of their failure to bring this action within the two-year period expressed in the contract was improper as they commenced the action within the periods set by our statutes of limitation and repose as defined by sections 1-52(16) and -50(5). We disagree.

N.C. Gen. Stat. § 1-52(16) states that "unless otherwise provided by law, for . . . physical damage to claimant's property, the cause of action . . . shall not accrue until . . . physical damage to his property becomes apparent . . . ." N.C. Gen. Stat. § 1-52(16) (2019). Additionally, N.C. Gen. Stat. § 1-50(5) states that,

> [n]o action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

*Id.* § 1-50(5).

N.C. Gen. Stat. § 1-50(5) sets out a six-year statute of repose that is meant to provide "protection to those who make improvements to real property." *Christie v. Hartley Constr.*, 367 N.C. 534, 540, 766 S.E.2d 283, 288 (2014). In *Christie*, our Supreme Court reasoned that there was "no public policy reason why the beneficiary of a statute of repose cannot bargain away, or even waive, that benefit." *Id.* at 540, 766 S.E.2d 283, 287. "North Carolina has long recognized that parties generally are 'free to contract as they deem appropriate.'" *Id.* at 540, 766 S.E.2d 283, 287 (quoting *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 244, 539 S.E.2d 274, 277 (2000)). This Court has also stated that when "the language of a contract 'is clear and only one reasonable interpretation exists, the courts must enforce the contract as written.'" *State ex rel. Utils. Comm'n v. Thrifty Call, Inc.*, 154 N.C. App. 58, 63, 571 S.E.2d 622, 626 (2002) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246

S.E.2d 773, 777 (1978)); *see also Hall v. Refining Co.*, 242 N.C. 707, 709, 89 S.E.2d 396, 397 (1955) ("While contracts exempting persons from liability for negligence are not favored by the law, and are strictly construed against those relying thereon nevertheless, the majority rule, to which we adhere, is that, subject to certain limitations . . . a person may effectively bargain against liability for harm caused by his ordinary negligence in the performance of a legal duty arising out of a contractual relation." (citations omitted)); *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 43–44, 626 S.E.2d 315, 323–24 (2006) (holding that the plaintiff's failure to adhere to the express provision of the contract—setting the period during which an action for damages could be brought—was controlling).

Agreements signed by plaintiffs can exempt defendants from liability for negligence alleged in the complaint.  *See Hall*, 242 N.C. at 709, 89 S.E.2d at 397 ("[A] person may effectively bargain against liability for harm caused by his ordinary negligence in the performance of a legal duty arising out of a contractual relation." (citations omitted)).  While we are not unsympathetic to the injury suffered to plaintiffs' real property and otherwise, our sympathy cannot displace our duty to apply the law.  Had plaintiffs not signed the agreement which clearly limited the time in which an action could be brought, plaintiffs' claims could have gone forward subject to the discovery rule and/or the statute of repose.  However, absent evidence of fraud or misrepresentation in the making of the contract, plaintiffs are bound by the

language in the contract into which they entered. *See Herring v. Herring*, 231 N.C. App. 26, 28, 752 S.E.2d 190, 192 (2013) ("[A]ny . . . contract . . . may be set aside or reformed based on grounds such as fraud, mutual mistake of fact, or unilateral mistake of fact procured by fraud." (citations omitted)); *Top Line Constr. Co. v. J.W. Cook & Sons, Inc.*, 118 N.C. App. 429, 432–33, 455 S.E.2d 463, 465 (1995) (affirming summary judgment against the plaintiff who sought monetary damages for work completed but not compensated where the plaintiff expressly agreed to be bound by the decision of a third party architect or engineer as to the satisfaction, approval, or acceptance of the plaintiff's work).

In the instant case, the contract provided that the writing contained the entire, final agreement of the parties. The provisions of the contract included an express limitation: "[defendant is] not liable for any consequential, incidental, indirect, punitive, treble, speculative, or special damages of any kind whatsoever, and *you may not bring any action against us more than two (2) years after the Completion Date.*" (emphasis added). The crawlspace remediation was completed in September 2011. Plaintiffs' brought suit in November 2016, more than five years later.

Because the express provision of the contract is clear, the contract must be enforced as written. *See Hall*, 242 N.C. at 709, 89 S.E.2d at 397; *Herring*, 231 N.C. App. at 28, 752 S.E.2d at 192; *Bob Timberlake Collection, Inc.*, 176 N.C. App. at 43–44, 626 S.E.2d at 323–24; *Thrifty Call, Inc.*, 154 N.C. App. at 63, 571 S.E.2d at 626;

*Top Line Constr. Co.*, 118 N.C. App. at 432–33, 455 S.E.2d at 465. The trial court did not err by failing to apply the discovery rule in accordance with N.C. Gen. Stat. §§ 1-52(16) and 1-50(5), and thus, plaintiff's argument is overruled. Accordingly, we affirm the 20 March 2019 order of the trial court granting defendants' motion for a directed verdict.

As we affirm the court's 20 March 2019 order granting defendant's motion for a directed verdict based on the express limitation in the contract, we need not reach plaintiffs' remaining arguments.

AFFIRMED.

Judges ZACHARY and COLLINS concur.